# CASES

## ARGUED AND DETERMINED

### IN THE

## United States Circuit and District Courts.

---

### HAMPTON, Ex'r, etc., v. TRUCKEE CANAL CO.

*(Circuit Court, D. Nevada. November 24, 1883.)*

JURISDICTION—FORECLOSURE OF MECHANICS' LIENS—SUIT BY ASSIGNEE—AVERMENT AS TO CITIZENSHIP—ACT OF MARCH 3, 1875.

Where the assignee of a mechanic's lien seeks to enforce and foreclose such liens in a circuit court of the United States, it must affirmatively and clearly appear from the bill filed that the court had jurisdiction as to all of the original lien claimants, and where no averment as to the citizenship of some of such claimants is made in an amended bill, it will be presumed that they are citizens of the state where the suit is brought, and the bill will be dismissed for want of jurisdiction.

Suit in Equity to foreclose certain mechanics' liens. The opinion states the facts.

*W. E. F. Deal,* for complainant.

*C. S. Varian, R. H. Lindsey,* and *R. M. Clarke,* for defendant.

Before SAWYER and SABIN, JJ.

SABIN, J. This suit was brought in this court by C. P. Hubbell, since deceased, a citizen of the state of California, against the defendant, a Nevada corporation, to foreclose certain liens, usually called mechanics' liens, set forth in the bill of complaint. The liens sought to be foreclosed and enforced against defendant are 122 in number, aggregating $115,059.66 in amount. They are classified as contractors', subcontractors', material-men's, and laborers' liens. Complainant, Hubbell, derived title to those liens through various assignments, direct and intermediate, to himself. Of these liens, 112 were assigned by the original lienholders to J. C. Hampton, and by him assigned to Hubbell; three were assigned to J. C. Hampton & Co., and by

said firm to Hubbell; two to S. W. Lee, and by him to Hubbell; and five were assigned by the original lienholders directly to Hubbell.

The original bill of complaint was silent as to the citizenship of all of the original lienholders, and also as to the citizenship of J. C. Hampton, J. C. Hampton & Co., and S. W. Lee, intermediate assignees of 117 of these liens, and the·immediate assignors of complainant. Objection having been raised as to the sufficiency of the bill on this point, complainant filed an amended bill, June 5, 1882, alleging that 113 of the original owners of said liens named in the amended bill were Chinamen, and subjects of the emperor of China at the date of the filing of both the original and amended bill of complainant. The amended bill, however, was wholly silent as to the citizenship of the other nine original lien-owners, and also as to the citizenship of J. C. Hampton,·J. C. Hampton & Co., and S. W. Lee, intermediate assignees of 117 of the liens sought to be foreclosed. The demands of the nine lienholders whose citizenship is not set forth aggregate the sum of $4,890.52, in amounts varying from $2,584.66 to $33.

This omission in the amended bill of any averment as to the citizenship of these nine original lien claimants may be considered as an admission that they were citizens of Nevada at the time of the commencement of this action, since, had their citizenship been such as to bring them within the statute giving this court jurisdiction, it certainly would have been set forth in the amended bill prepared and filed expressly to obviate any supposed jurisdictional defect in the original bill. If, however, this presumption is not in fact true, still the bill is fatally defective on this point. The jurisdiction of the court as to all parties must affirmatively and clearly appear by the pleadings, and this not by way of description or recital, but by positive averment.

The rulings of the supreme court upon this point have been uniform, and without exception. In *Brown* v. *Keene*, 8 Pet. 112, the court says: "The decisions of this court require that the averment of jurisdiction shall be positive that the declaration shall state expressly the fact on which jurisdiction depends. It is not sufficient that jurisdiction may be inferred argumentatively from its avertments." In *Ex parte Smith*, 94 U. S. 455, the court says: "No presumptions arise in favor of the jurisdiction of the federal courts."

The statute of March 3, 1875, controlling the jurisdiction of the court in this matter, reads as follows:

"Nor shall any circuit or district court have cognizance of any suit, founded on contract, in favor of an assignee, unless a suit might have been prosecuted in such court to recover thereon if no assignment had been made, except in cases of promissory notes, negotiable by the law-merchant and bills of exchange."

In this case it does not appear by the original or amended bill that any one of these nine original lien-owners, whose citizenship is not

set forth in the amended bill, could have prosecuted an action in this court, upon any of those liens, "if no assignment had been made." But such fact must appear, or the court has not jurisdiction. Section 11 of the judiciary act of 1789 does not materially differ, upon the point here involved, from the act of 1875, *supra*, and the rulings of the supreme court upon section 11 of the act of 1789 are applicable in this case. *Brown* v. *Keene*, 8 Pet. 112; *Jackson* v. *Ashton*, Id. 148; *Montalet* v. *Murray*, 4 Cranch, 46; *Corbin* v. *County of Black Hawk*, 105 U. S. 659; *Sere* v. *Pitot*, 6 Cranch, 332; *Bradley* v. *Rhine's Adm'rs*, 8 Wall. 393; *Mollan* v. *Torrance*, 9 Wheat. 537; *Morgan's Ex'r* v. *Gray*, 19 Wall. 81. We think there is no conflict, upon the point here involved, in the rulings of any of the national courts.

It was suggested, upon argument, that the citizenship of these nine original lienholders was immaterial, since complainant owned all of the 122 liens, and hence none of the other lien claimants could be prejudiced; and, further, that the amount claimed by them is embraced in the lien filed by Linn Chung & Co., as original contractors, for $50,000, and is also embraced in the lien filed by Ah Wan, as a subcontractor, for the same amount. The merit of the suggestion is not clear; but were it so, it could scarcely prevail against the positive provision of the statute. While the national courts may be invoked, in proper cases, to give effect to and enforce statutory liens and remedies provided by a state, yet in such proceedings they are guided by the state statute, and follow, as nearly as possible, the course indicated therein. Should the court proceed to examine this case upon the merits, it would be as necessary for it to investigate and determine how much, if anything, was due upon each of these nine liens, as it would to investigate and determine how much might be due upon any or all of the other 113 liens. The liens cannot be singled out, or segregated, and some of them considered and others not considered. Some of the liens might be valid under the state statute, and others be fatally defective, for non-compliance with the statute in perfecting them. It might appear that the lien of Linn Chung & Co., and that of Ah Wan, for $50,000 each, were defective and could not be enforced, and that all of the other liens were valid and binding upon the defendant, and complainant entitled to judgment thereon. The liens must each be examined, and their validity under the statute determined, as well as the amount due, and the rank of each declared. St. Nev. 1875, *c.* 64, § 11. And this is evidently the theory on which the bill of complaint was framed. If it was immaterial to complainant whether or not these nine liens be adjudicated upon, why were they set forth in the bill, and judgment invoked upon them as well as upon the other 113 liens, and why did complainant purchase them if not beneficial to him in some way? And, if beneficial, he is entitled to such benefit.

It is further insisted by complainant "that the liens in this case

are, in no sense of the word, contracts," and hence are not within the act of congress. While it may be true that a lien *per se* is not a contract, yet all liens of the nature set forth in the bill in this action arise and are based upon contract, express or implied. The lien itself is merely an instrumentality, a special remedy given, by which the contract may be enforced. The assignment of a mere lien would be idle—would confer no right of action upon the assignee thereof—if such assignment did not also transfer the debt secured by the lien. A debt is a sum of money due upon contract, express or implied, or established by judgment. The debt transferred is the substantial thing; the lien is an incident thereto,—a statutory remedy which the assignee may pursue, or he may wave it and pursue his common-law remedy, to recover the debt. The lien itself may expire by limitation, if suit be not commenced to enforce it within six months after the same has been filed for record. St. Nev. 1875, c. 64, § 8. But the debt would not be extinguished by the expiration of the lien, and it could be enforced by proper remedy. The statute above cited cannot bear the construction sought to be put upon it. Section 5 of the act makes it obligatory upon the lien-claimant that he state in his claim the "terms, time given, and conditions of his contract;" and the entire act is based upon the supposition of a contract, express or implied, between the parties. The words "contractor," "subcontractor," "debt," "creditor," etc., are of constant recurrence in the act. And it is not clear how a state can authorize or empower one person to charge an arbitrary lien against the property of another person, no privity, or contract, express or implied, existing between such persons. Without considering this objection further, it will be sufficient to observe that this action is certainly brought to enforce the terms of a contract fully set forth in the bill of complaint. As it does not appear from the amended bill that any of these nine original lienholders, whose citizenship is not set forth, could have maintained an action in this court to foreclose or enforce any of those liens, it follows that their assignee could not do so. On this point there is no conflict in the decisions.

We do not deem it necessary to decide whether or not this action could be maintained by complainant, as the assignee of J. C. Hampton, J. C. Hampton & Co., and S. W. Lee, intermediate assignees of a portion of the liens, they being presumably citizens of Nevada, and defendant being a Nevada corporation. The decisions on this point seem to be somewhat conflicting. *Bradley* v. *Rhine's Adm'rs*, 8 Wall. 396; *Mollan* v. *Torrance*, 9 Wheat. 537; *Morgan's Ex'r* v. *Gray*, 19 Wall. 81. *Contra*, see *Wilson* v. *Fisher's Ex'rs*, Bald. 133; *Dundas* v. *Bowler*, 3 McLean, 204; *Milledollar* v. *Bell*, 2 Wall. Jr. 334. But upon the case as presented in the original and amended bills, we think this court has no jurisdiction in this case. We call attention to the fifth section of the act of March 3, 1875, and to the ruling of the supreme court thereon, in *Williams* v. *Nottawa*, 104 U. S. 209. It is a

matter of regret that the decision of the court on this question of jurisdiction was not had before the case had gone to the extent to which it has proceeded, it being now submitted for judgment upon the testimony and proofs taken. But we cannot examine the case upon the merits. It must, therefore, be dismissed from this court for want of jurisdiction, without costs, and without prejudice to complainant.

Let decree be entered accordingly, and without prejudice.