GRANT S. WINTERS, PLAINTIFF IN ERROR, v. THE STATE OF NEW JERSEY, DEFENDANT IN ERROR.

1. Where an indictment that is within the competence of a Court of Quarter Sessions to try is received in that court and tried therein without an order of the Oyer and Terminer and also without objection by the defendant, the irregularity, if such it be, is one of those imperfections not affecting the merits of the defence for which a judgment given upon an indictment may not be reversed.

2. Under the act of May 9th, 1894, a plaintiff in error against whom a verdict has gone upon the issue of insanity "suffers manifest wrong and injury upon the evidence adduced at the trial" only when the proof of his insanity so preponderated that, upon a rule to show cause, the trial court should set aside the verdict.

3. The failure of the jury to adopt the opinions of expert witnesses upon the issue of insanity is not *per se* ground for a new trial.

4. The act of May 9th, 1894, applied to the defence of insanity and to requests to charge in respect thereto.

[*Argued March 16th*, 1898 ; *decided June 20th*, 1898.]

On error to the Supreme Court.

The indictment in this case was for assault with intent to murder. The defendant was convicted and the case was removed to the Supreme Court by writ of error.

It was argued at June Term, 1897, before Magie, Chief Justice, and Justices Depue, Van Syckel and Gummere.

The following memorandum of decision was filed by Mr. Justice Gummere :

" GUMMERE, J. The first error alleged is that there is nothing on record to show that the indictment, which was found in the Oyer and Terminer, was sent down by that court to the Sessions to be tried, and that consequently it appears from the record that the Sessions was without jurisdiction to try the cause. But this contention overlooks the fact that there are two ways in which the Sessions acquires jurisdiction to try a case like that now before us—*first,* by an order of the

Oyer and Terminer, when the indictment is returned by the grand jury into that court; and *second,* by receiving the indictment directly from the grand jury, when that body, acting under the authority of the one hundred and forty-eighth section of the Criminal Procedure act (*Gen. Stat., p.* 1149), returns its indictments and presentments into the Sessions instead of the Oyer. In the latter condition of affairs no order of the Oyer is necessary to give the Quarter Sessions jurisdiction.

"The only other error alleged, which is of enough substance to warrant mention, is that the trial judge refused to charge the jury that, under the evidence and the law applicable thereto, it was their duty to acquit the plaintiff in error on the ground of insanity. We have examined carefully the whole of the testimony in this case, with this alleged error in mind, as well as in the discharge of the duty imposed upon us by the act of May 9th, 1894. *Gen. Stat., p.* 1154. The trial judge properly charged the jury on the law of insanity, as a defence in criminal cases; and our examination of the testimony convinces us that (to use the language of the Court of Errors and Appeals, in *Kohl* v. *State,* 30 *Vroom* 445), it is not 'of such a nature that, when fully and fairly examined, it will not satisfy a considerate mind beyond a reasonable doubt of the guilt of the accused.'

"Our conclusion is that the request to charge was properly refused, and that we would not be justified in ordering a new trial under the act of 1894.

"The judgment brought up should be affirmed."

For the plaintiff in error, *Samuel Kalisch.*

For the defendant in error, *Joshua S. Salmon,* prosecutor of the pleas.

The opinion of the court was delivered by

GARRISON, J.    Grant S. Winters was convicted in the Court of Quarter Sessions of the county of Morris of an

assault with intent to murder. The record being here on a writ of error, the regularity of the procedure is questioned upon the ground that, although the indictment was received in the Sessions under section 148 of the Criminal Procedure act, it was not triable therein without the Order of the Court of Oyer and Terminer provided for in section 31 of the same act. There are other sections that bear upon the question, which, however, will not be passed upon at this time, for the reason that the question itself is not here for decision, and if it were, would not lead to a reversal of the judgment. The record shows a trial upon the merits without objection before a court competent to try indictments for the offence with which the defendant was charged. The regularity of the procedure by which the defendant was put upon trial before a court of general competence should have been challenged by an objection made at the time. It is true that acquiescence cannot confer jurisdiction, *i. e.*, competence to try indictments for certain offences, but where such competence exists, acquiescence can and does waive a mere irregularity in procedure. The record, moreover, discloses a further reason for ignoring this assignment of error, for it shows that there had been a previous conviction and judgment in the Sessions, which had been by the defendant removed into this court and here reversed and a judgment entered remitting the record to the court below, to be proceeded with according to law. "Therefore," in the language of the record now before us, "it was tried in the Sessions." In the absence of a bill of exceptions to the point, this recital is conclusive. Upon either of these grounds, the irregularity, if such it be, was one of those imperfections not affecting the merits of the defence, for which a judgment given upon an indictment may not be reversed. *Gen. Stat., p.* 1138, § 89.

A further objection is that the record does not show that the persons composing the Court of Quarter Sessions were judges of that court. This point is not assigned for error, is not raised by the writ of error and is not true as a fact when tried by the return.

Upon the merits of the case, the position taken is thus stated in the brief of counsel for the defendant:

"*Point* 2. The judge erred in refusing to charge the jury that, under the evidence and law applicable thereto, it was the duty of the jury to acquit the plaintiff in error."

In considering this branch of the case, all adherence to common law methods of review must be abandoned and the defendant's conviction be examined under the greater amplitude of the act of May 9th, 1894. *Gen. Stat., p.* 1154. The construction placed upon this statute by this court in Kohl's case (30 *Vroom* 445) does not seem to be capable of any application to the case in hand, for the reason that the rule there laid down, with respect to the sufficiency of the case made by the state against the defendant, is, by force of the decision of this court in Graves' case (16 *Id.* 347), strictly inapplicable to the defence of insanity. The decision in Kohl's case, in abstract, is as follows : " If, in a criminal case brought before this court, under the act of May 9th, 1894, the evidence is of such a nature that, when fully and fairly examined, it will not satisfy a considerate mind, beyond a reasonable doubt, of the guilt of the accused, a conviction thereon must be set aside and a new trial granted."

In Graves' case the decision was that the trial court properly refused to charge that " reasonable doubt in the mind of the jury as to the sanity of the accused should resolve the doubt in favor of his insanity."

These decisions do not establish two standards—one for the jury and one for this court—which would be the case if a conviction legally consistent with a reasonable doubt of the sanity of the accused could be here set aside because of the reasonableness of such doubt. The defence of insanity was not before the court in the case of Kohl, and hence is not within its decision. The statute must be consulted, directed and anew, bearing in mind that the defence of insanity is of no weight if it be not sustained. In the light of this rule a plaintiff in error, under the act of May 9th, 1894, against whom a verdict has gone upon the issue of insanity, suffers

" manifest wrong and injury upon the evidence adduced at the trial" only when the proof of his insanity so preponderated that, upon a rule to show cause, the trial court should set aside the verdict. With this key to the legal situation, the case disclosed by the statutory return presents this question, viz., whether the expert opinions of the medical witnesses so preponderated over those of lay witnesses, based upon actual observation, that a verdict not in accordance with the former was manifestly wrong. That the expert witnesses had a special knowledge of the general subject is an undoubted fact in favor of the proposition, but in the forum of the mind the possession of special knowledge by this class of witnesses is apt to be placed over against the equally undoubted fact that they are, as a class, called as witnesses because of the special opinion they are expected to give, which, in the nature of the case, rests largely upon hypothesis that may not seem to the average jury to dispose of the practical question at issue. It is to this attitude of *quasi* advocacy that expert testimony owes at once its weakness and its strength. The general rule insisted upon by the plaintiff in error cannot be laid down, and there is nothing in the circumstances of his case to take it out of whatever may be the general rule upon the subject. In this connection the observations of Chief Justice Hornblower, charging the jury in the case of *State* v. *Spencer*, 1 *Zab.* 208, are apposite. The inevitable conclusion is that it was not error for the court below to refuse to charge the request framed to raise the question above considered, and that no manifest wrong and injury was done to the accused by the verdict of the jury upon the issue thus submitted.

Another point that has been considered is whether the defendant was injured by the charge of the court when submitting the above issue to the jury. Upon this point the court charged in effect that, in order to entitle the defendant to an acquittal upon the ground of insanity, he must satisfy the jury that his mind was so impaired that he was unable to distinguish between right and wrong and unable to control his act. The defendant's burden had been correctly stated

when the copulative was reached; what followed impaired the whole as an abstract proposition. This question is not stirred by counsel for the defendant, but has, notwithstanding, been considered under the second head enumerated in the act of 1894. The matter comes up in two ways—first, under a bill of exceptions, and secondly, under the certificate, in accordance with the act just cited. To the bill of exceptions the complete answer is that the court, in this objectionable formula, charged the language of a request preferred on behalf of the defendant. Without deciding whether this coincidence of language also satisfies the requirements of the act of 1894, the merits of the question have been considered in the two aspects that follow: First, that the language the court was asked to charge had reference not to the case made by the state, but to the force and effect to be given to a defence interposed by the accused. It is an unquestioned right of the accused to have such a request either charged in substance or refused so distinctly that it may be the basis for a review of his conviction. It follows that when the former course is taken he has had the whole benefit of his defence and cannot be accorded a new trial merely because he deems himself injured by his own limitation of the defensive position he set up. The other aspect of the case is that the objectionable collocation could not, in view of the defendant's testimony, either increase his burden or diminish the benefits of his defence. The proposition, although faulty, was more favorable to the case of the accused than the correct rule would have been. Framed as it was, it would not have been error to have refused to charge it, but, apart from the judicial language used, the defendant was without any benefit from his own proofs. Dissevered from the ability of the defendant to control his conduct upon sane premises, there was no proof of the moral obliquity implied in the common law rule.

In either aspect of the matter, the defendant had the benefit not only of the whole of the defence offered by him, but also of all there was in it that could be beneficial to his cause.

In construing the act of· 1894, in the earlier part of this opinion, it was stated that the test of manifest injury was the propriety of a retrial of the indictment, upon the ground that the proof of· the defendant's insanity has preponderated. In this aspect the proofs have therefore been examined.

The case presented by the defendant was that his heredity predisposed him to mental disorder, and that, in point of fact, he was, at the time he shot Vreeland, the victim of an insane delusion, the general nature of which was suggested by the expert witnesses, subject to the opinion of the jury as to whether the suggestions so made were borne out by the testimony. The medical witnesses gave the name "paranoia" to a group of mental conceits, of which the most characteristic was a sense of injury or unjust persecution, and consequently justifiable resentment or redress. They said that persons subject to "paranoia" were under a network of fixed and systematic delusions and had impulses that they did not resist, which at times took a form injurious to others if the delusion so prompted. There was more to the same effect. These witnesses spoke in the name of a learned profession, and doubtlessly represented the current state of knowledge upon the subject. It may further be assumed that the classification they adopted was accurate and their nomenclature apt.

The question for the jury, after all, was whether the defendant was under an insane delusion at the time he shot his companion. If the testimony did not lead to this belief the defence failed, not because the jury would not accept the classifications of the alienists and their nomenclature, but because, in view of the facts, they did not believe that the defendant had acted under a delusion of the sort suggested. It cannot be said that the repudiated suggestion preponderated without saying that the case should have been left to the experts and not to the jury. Judged by the facts apart from theories, the verdict was not against the weight of evidence on the issue of insanity, and hence should not be disturbed.

This concludes the review of the case presented to the court, the judgment below being in all things affirmed.

*For affirmance*—THE CHANCELLOR, DIXON, GARRISON, LIPPINCOTT, LUDLOW, ADAMS, HENDRICKSON, NIXON.    8.

*For reversal*—COLLINS, BOGERT, KRUEGER, VREDENBURGH.    4.