*36 Vroom.*                    State v. Polhemus.

65   387
65   397

STATE OF NEW JERSEY v. WILLIAM POLHEMUS.

Submitted July 6, 1900—Decided November 12, 1900.

1. In a criminal prosecution mere irregularity of procedure, which is not objected to until after conviction and sentence, affords no ground for reversal of the judgment.
2. A witness may be permitted to express his own opinion of the truthfulness of him, whose testimony is sought to be impeached, when the latter's general reputation for truth and veracity is known to the witness, and his opinion is based thereon.

On error to the Cumberland Quarter Sessions.

Before DEPUE, CHIEF JUSTICE, and Justices GUMMERE, LUDLOW and FORT.

For the plaintiff in error, *Walter H. Bacon.*

For the defendant in error, *J. Hampton Fithian,* prosecutor of the pleas.

The opinion of the court was delivered by

GUMMERE, J.   At a trial which took place before the Court of Quarter Session of the county of Cumberland, the defendant was convicted of the crime of grand larceny, and the first ground upon which we are asked to set the conviction aside is that, although the case was tried in the Sessions, the indictment was found in the Oyer, and that no order of the latter court sending the case down appears in the record.

Assuming that the procedure was irregular for want of such an order, an objection on that ground, to be effective, should have been taken at the trial of the case. This was not done, and it is now too late to take advantage of it. "The irregularity, if such it be, is one of those imperfections not affecting the merits of the defence for which a judgment given upon an indictment may not be reversed." *Winters* v. *State,* 32 *Vroom* 613.

The second error assigned relates to the admission of testimony, introduced by the state for the purpose of impeaching the evidence of one Camp, a material witness produced on behalf of the defendant. The impeaching witness was first asked: "Do you know the reputation of that witness (Camp) for truth and veracity?" To this question he answered, "Yes, sir." He was then asked: "Would you or would you not believe him upon his oath?" This was objected to by the defence as improper, but the witness was permitted to answer the question, and replied, "No, sir; I would not like to."

The usual mode pursued in an examination of this kind is, first, to inquire if the impeaching witness possesses knowledge of the reputation of him whose testimony is sought to be impeached for truth and veracity in the neighborhood where the latter resides. If he does, then he should be asked to state what that reputation is, and if he answers that it is bad, he may then be asked if, from his knowledge of such reputation, he would believe the impeached witness under oath. The propriety of permitting a witness to express his own opinion of the truthfulness of him whose testimony is sought to be impeached, even when that opinion is based upon the latter's general reputation, has been questioned by the courts of some of our sister states, but the great weight of authority is in favor of allowing it. In order, however, to be competent, an opinion expressed must be based upon the general reputation of the impeached witness for truth and veracity, and not upon personal dealings with him. Although every man is supposed to be capable of supporting his reputation for truthfulness whenever it is attacked, it would be almost impossible for him to be prepared to show, without previous notice, that the opinion of any particular person, of his worthiness of belief, when based upon personal transactions with him, was not in fact justified by those transactions.

In the case before us, not only was the opinion of the impeaching witness not based upon Camp's general reputation for truth and veracity, but it does not even appear what that

reputation was. It may very well be (so far as the case shows) that it was irreproachable in the neighborhood where Camp lived, and that the opinion of the impeaching witness was based entirely upon the personal relations of the two. The testimony objected to was improperly admitted, and it was undoubtedly injurious to the defendant's case. For this reason the conviction must be set aside.

As a new trial must follow the reversal of this conviction, we have examined the other alleged errors which have been assigned by the defendant, in order that if they were, any of them, of substance, the errors might be avoided at the retrial of the case. Our examination, however, has failed to disclose any error except that which I have already pointed out.

The judgment under review will be reversed, and the case remitted to the Court of Quarter Sessions for a trial *de novo.*