STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. LOUIS BALDANZO, PLAINTIFF IN ERROR.

Argued October 24, 1929—Decided February 3, 1930.

For the defendant in error, *J. Vincent Barnitt,* prosecutor.

For the plaintiff in error, *Ward & McGinnis* (*Peter J. McGinnis,* on the brief).

The opinion of the court was delivered by

CASE, J. The case comes from the Supreme Court where, on writ of error to the Passaic Court of Quarter Sessions, the proceedings in the trial court were reviewed and affirmed. The parties will be referred to herein as the state (defendant in error) and the defendant (plaintiff in error).

The defendant was found guilty under an indictment charging him with assault and carnal abuse upon one Anna Lacota, a female child of the age of fourteen years, on February 16th, 1927. The evidence of the defendant's guilt came chiefly and almost exclusively from the girl herself, who testified to three acts of intercourse, the first of which, according to her story, was committed by force and threats at the noon hour, in the cellar of defendant's home, while the family were at dinner on the floor above, and the second and third of which, committed under other circumstances, she designates as "attacks." The respective dates were January 27th, 1927, February 16th, 1927, and July 5th, 1927.

Defendant's brief argues three points: *First,* that the trial court committed error in excluding evidence which would impeach the credibility of the complaining witness or show her interest, prejudice and bias; *second,* that the trial court erred in refusing to receive testimony as to the good character of the defendant; and *third,* that the verdict was against the clear weight of the evidence.

We have examined the thirteen assignments of error set forth under point one and find no reversible error therein.

Under point two are argued various rulings of the court on questions regarding the defendant's reputation. Two of these exceptions are contained in the testimony of Frank Nito, a portion of which is as follows:

"Q. Do you know the defendant, Mr. Baldanzo? A. Yes, sir. Q. How long have you known him? A. Fifteen or sixteen years. * * * Q. Do you know where Mr. Baldanzo lives? A. Yes, sir. * * * Q. Do you know what his reputation is in the neighborhood where he resides for chastity and morality, do you? A. Yes, sir."

The witness was then briefly cross-examined as to his qualifications, after which counsel for defendant asked:

"Q. Do you know what his reputation was prior to January 25th, 1927, for chastity or morality? A. Yes, sir."

The prosecuting attorney again cross-examined, and upon receiving from the witness the information that he had not, before January 27th, 1927, "had occasion" to discuss with anyone the defendant's reputation for chastity and morality, protested that the witness was not qualified. Defendant's attorney then asked:

"Q. Had you ever heard anything against his reputation prior to January 25th, 1927?"

That question was, on objection, overruled and an exception allowed thereon.

The witness was then asked on direct examination whether he knew what the defendant's reputation was in the neighborhood where he resided for being a quiet, peaceful and law-abiding citizen prior to January 27th, 1927. That question was objected to, the objection was sustained and an exception noted to the ruling.

Both of these excepted rulings were assigned as error, the assignment numbers being ten and eleven, respectively.

The rulings of the court appear to have been based on the theory that there can be reputation only where and to the extent that things *are said*. Counsel for the state argues vigorously that there can be reputation only where there

has been discussion. The word "reputation" is derived from the Latin *puto,* to count, think, and *reputo,* to count over, think over.//Reputation is "the estimation in which one is held; the character imputed to a person in a community, society or public." Webster's New International Dictionary. Esteem may be evidenced in different ways; perhaps by a glance or an attitude, or by the seeking or avoiding a person's society; sometimes by an intangible something that is felt but which can scarcely be described—atmosphere. What people think of a person may also be indicated by what they say, particularly if the thought is critical. But it is the unusual, the abnormal, the non-conforming act that provokes talk. To behave one's self, to live decently, is to be, in those respects, normal and conventional. The great majority of people are that way. There is little therein to start tongues wagging. When one departs from the conventional and does that which the majority of people do not do, then talk begins, and its volume is apt to be in direct ratio to the degree by which the act or person talked of varies from the norm. It does not follow, however, that a man who leads a life that, according to the standards of the neighborhood, is usual and correct and who, therefore, has not given his neighbors food for chat holds no place in the esteem of the community. On the contrary, he may be highly regarded. The very absence of talk is an indication that the neighborhood regards him as worthy. Silence may indicate an exceedingly fine reputation. As has well been said: "The more unsullied and exalted the character is, the less likely it is ever to be called into question." *Lemons* v. *State,* 4 *W. Vir.* 755; 6 *Am. Rep.* 293. As a practical self-demonstration, one may make mental selection of the person who to him is the quintessence of chastity and then attempt to recall having heard any neighborhood discussion of that attribute. Shall then the man whose life has met the community thought as to how a person should live and who consequently has not been talked about be deprived of the privilege of proving this reputation when the hour of need arrives and when it may be of vital importance to him to show what the com-

munity estimate of him is? In all fairness that should not be, and, according to the weight of authority, is not so. It has been the accepted practice, if a witness testifies that he knows the reputation in the community, for morality, of a defendant charged criminally with immoral conduct, to permit the witness to state what that reputation was. *State* v. *Bloom,* 89 *N. J. L.* 418. One who is otherwise qualified and who has been in such position that he would probably have heard comment had there been such, may testify to the reputation of another in the neighborhood where the latter resides, even though the witness has heard nothing said.

As to the qualities concerning which evidence of reputation is admissible, it has been held by the courts of this state that specific reputation concerning the act charged in the indictment is relevant (*State* v. *Snover,* 63 *N. J. L.* 382), and that general reputation of a disposition contrary to the act charged is also admissible. *State* v. *Baker,* 53 *Id.* 45; *State* v. *Snover, supra.* Evidence of defendant's reputation for chastity and morality was, of course, admissible. We think also that on the trial of an indictment for assault and carnal abuse, particularly when the state's case includes the recital of an incident which, if true, embraces all of the elements of a rape by the defendant on the complaining witness, the reputation of the defendant as a quiet, peaceful, law-abiding citizen would indicate a disposition contrary to the committing of the acts charged. The wrongful rejecting of competent evidence of such reputation is a deprivation of a substantial element of the defense. *State* v. *Snover, supra.* Where the reputation to be proved is of such a character as to render it improbable that the person charged with the offense is guilty, it is reputation up to the time of the commission of the offense only which is admissible. *State* v. *Sprague,* 64 *Id.* 419: The first attack, according to the state's case, was made January 27th, 1927, and the questions therefore complied with this rule.

We conclude that the question directed toward the repu-

tation of the defendant for being a quiet, peaceful and law-abiding citizen prior to January 25th, 1927, should have been admitted and that the overruling of it was harmful error.

Regarding the question—"Had you ever heard anything against his reputation prior to January 25th, 1927?" The mode generally pursued in the examination of "character" witnesses in this state is that outlined in *State* v. *Polhemus,* 65 *N. J. L.* 387, namely, the witness is asked whether he knows the reputation in the neighborhood where the subject resides and, upon giving an affirmative reply, is asked what that reputation is. We consider that inasmuch as the witness had shown he was in a position to know, and had testified that he did in fact know, the reputation of the defendant for chastity and morality, the next step in the sequence suggested in *State* v. *Polhemus, supra,* would have been to ask what that reputation was. Had that question been asked the witness might have answered that the reputation was bad. The primary fact is the reputation itself and the witness should have been committed as to it. We do not find error in the refusal to permit the asked question at that stage of the record.

The remaining assignments of error argued under point two of defendant's brief are of the same factual presentation and involve the same legal questions as those herein discussed and decided.

We are not persuaded that the verdict was against the clear weight of the evidence.

The judgment will be reversed to the end that a *venire de novo* issue.

*For affirmance*—BLACK, J. 1.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CAMPBELL, CASE, BODINE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 11.