46 N.J. Super. 454 (1957)
134 A.2d 805
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN MICCI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 9, 1957.
Decided October 3, 1957.
*456 Before Judges CLAPP, JAYNE and HUGHES.
Mr. Julius E. Kramer argued the cause for appellant (Messrs. Chandless, Weller & Kramer, attorneys).
Mr. William C. Brudnick, Special Assistant Prosecutor of Bergen County, argued the cause for respondent (Mr. Guy W. Calissi, Prosecutor of Bergen County).
*457 The opinion of the court was delivered by HUGHES, J.A.D.
Having been charged by indictment with bookmaking in violation of N.J.S. 2A:112-3, the appellant was convicted after jury trial and by this appeal directs our attention to certain evidence rulings made therein. While no question is raised as to the quantum of the evidence furnished by the State to support this conviction (which we note parenthetically was sufficient), it is contended that the exclusion of certain testimony was erroneous and so gravely prejudicial that the verdict should be invalidated for that cause.
The comparative significance of the proffered evidence must be assessed in the context of the trial proofs, which in themselves were uncomplicated. The defendant, a single man, lived with his parents and a brother in a home "alongside" his confectionery store at 422 Paterson Avenue in East Rutherford, Bergen County. This establishment was the situs of the offenses alleged, the State contending that he there had interrupted the blameless tenor of his ordinary business pursuits with forays into the forbidden commerce of accepting and recording wagers, made by the incurably sanguine, upon the running of horses, mares and geldings, in violation of law. He had operated this store for 15 or 20 years and his parents had done so before him for some years. The primary evidence of the State consisted of the testimony of three witnesses who asserted that on sundry occasions within the indictment period they had placed bets on horse races with appellant, although the trial judge excluded the testimony of the third such witness as being too indefinite for consideration by the jury. The defense consisted of a detailed and unequivocal denial by appellant of these or any other betting incidents, the testimony of another witness attacking the story of one of the two crucial state witnesses, and an abortive tender of evidence of reputation of good character on the part of the accused. Additionally, there was an unsuccessful attempt to insert testimony of the detail of the seizure of a certain jug or receptacle in which money was kept, on the occasion when prosecutor's *458 detectives descended in some force upon the store on November 16, 1956. At this time, a brother of appellant was in charge of the store in the absence of the latter. The errors so assigned are confined to the exclusion of these two evidentiary items.
Our appellate concern with these trial developments is not confined to the ascertainment of error per se, but has the broader reach of assessing the impact thereof, in the whole context of the proceedings, upon the fundamental rights of the defendant, to determine whether, in that setting, he suffered by them manifest wrong and injury. R.R. 1:5-1(a); 2:5. By this standard, we must discard the point made as to the rejection of evidence of the details of the "raid" by the prosecutor's detectives on the store in question, despite the appellant's reminder to us that the bridge of factual relevancy, in New Jersey, is sometimes considered a broad one, in that too precise admeasurements of logical relevancy should not withhold from the jury "circumstances which may shed some helpful light." Miller v. Trans Oil Co., 18 N.J. 407 (1955). There was here no specific offer of proof (cf. R.R. 3:7-8; 4:44-3), and we glean from the questions by which counsel explored this subject before being interrupted by the definitive exclusionary ruling of the court no clue to any probative relevancy between the subject of inquiry and the issue involved, particularly since the State's evidence had dealt not at all with the details of such "raid." Absent such offer, the court is unable to reach a conclusion as to the reversible error suggested, and should not speculate upon its existence. New Jersey Highway Authority v. Rudd, 36 N.J. Super. 1 (App. Div. 1955); State v. Gambutti, 36 N.J. Super. 219 (App. Div. 1955). Accordingly, this evidence ruling was not erroneous in the sense we have described.
But that specificity of probative relationship is not lacking as to the other branch of evidence offered and excluded. The appellant called to the stand in his defense one, Zimmerman, who had known him for some 40 years and who *459 professed to know his reputation in the community in which the appellant lived for truthfulness and honesty. This witness had talked with other people who knew appellant and was familiar also with his general reputation in such community. Nevertheless, the witness was not permitted to testify thereto for the specific reason that he did not himself live in the "community" in which appellant lived. Mr. Zimmerman had resided in Carlstadt, a contiguous municipality, for some 68 years and conducted a business there at a point five blocks from appellant's residence. For the same reason, which the learned court did not hesitate to specify as the basis for his ruling, similar evidence by another witness, one, Poiret, was excluded, although he too had evinced a knowledge of the reputation of appellant in East Rutherford, this witness having operated his business in that municipality and having known the appellant for some 15 years.
The relevance of evidence of good reputation in the community, or "character testimony" as sometimes it is called, is firmly imbedded in the law, and the wrongful rejection of competent evidence thereof amounts to a deprivation of a substantial element of the defense. State v. Baldanzo, 106 N.J.L. 498 (E. & A. 1930). Our former Supreme Court emphasized the importance of such evidence in classifying as an abuse of discretion an unreasonable limitation of the numbers of witnesses permitted to be called at trial to attest thereto. State v. Randle, 128 N.J.L. 496 (Sup. Ct. 1942). While an occasional authoritative caveat has been heard (Nash v. United States, 54 F.2d 1006 (2 Cir. 1932)), the importance of this type of evidence is such that it is generally considered substantial error to permit it to go before the jury (after appropriate request to charge) without specific instruction as to its purpose and relevancy to the issue, which is not the case with most other types of factual evidence. Thus, lest evidence of good reputation be discarded by the jury as a sheer makeweight thrown into the balance to arouse sympathy, it is essential that the jury be advised that reputation of the defendant's *460 good character, when put in evidence, is a fact which the jury should consider with the other facts in the case, and that such reputation is an element which, when considered in connection with all the other evidence in the case, may, like other facts, generate a reasonable doubt. State v. Bloom, 89 N.J.L. 418 (Sup. Ct. 1916); Cohen v. United States, 282 F. 871 (3 Cir. 1922); United States v. Quick, 128 F.2d 832 (3 Cir. 1942); United States v. Frischling, 160 F.2d 370 (3 Cir. 1947). Otherwise stated, a minimal appropriate instruction has been described as setting forth (1) the purpose and function of such evidence, viz., to generate a reasonable doubt; (2) the probative status of such evidence, viz., that it is entitled to be considered whether the other evidence in the case be clear or doubtful; and, (3) the possible effect of such evidence, viz., that when it is considered with the other evidence, if a reasonable doubt is created as to defendant's guilt, he is entitled to an acquittal. Sunderland v. United States, 19 F.2d 202 (8 Cir. 1927). While it was established long ago that this type of evidence may not be restricted in its function or significance before the jury to cases in which the evidence of guilt is doubtful (Edgington v. United States, 164 U.S. 361, 17 S.Ct. 72, 41 L.Ed. 467 (1896)), the comparative weight of the proof of guilt is sometimes referred to in considering the significance of its exclusion. United States v. Semeniuk, 193 F.2d 508 (7 Cir. 1952); State v. Gambutti, supra. However, such comment is by no means universal. State v. Bloom, supra; State v. Baldanzo, supra; State v. Williams, 16 N.J. Super. 372 (App. Div. 1951).
So here, where the State's case hung on the testimony of two witnesses, countered by strong disaffirmation of guilt by the defendant (whose credibility stood unaffected by proof of any previous conviction of crime), the reputation evidence might well have taken on "a significance beyond that which a jury might accord to it in the ordinary criminal trial." State v. Gambutti, supra. It follows then, in any aspect, that if the proofs here offered constituted competent evidence of good reputation, their exclusion, if erroneous, was of *461 substance within the sense of the rules which have been noted.
In defense of the exclusionary ruling by the court below, the State first adheres to the ground upon which that ruling rested, i.e., that the intending witnesses were not resident in the same community in which appellant lived. This argument would identify the term "community" with the municipality of residence of the accused. In modern concept, this distinction seems unrealistic in view of the crowding together of municipalities which form one general region, and, in a sense, one community, and our present Supreme Court, in another connection, has deprecated the making of a fetish out of invisible municipal boundary lines. Borough of Cresskill v. Dumont, 15 N.J. 238 (1954). The sense of such view would seem to apply with equal force to the present case, considering the purpose for which the rule of community reputation exists. Conceding the validity of that rule, which restricts this type of evidence to that of reputation existing in the community or neighborhood in which the shadow of defendant's daily life is cast (State v. Polhemus, 65 N.J.L. 387 (Sup. Ct. 1900); State v. Brady, 71 N.J.L. 360 (Sup. Ct. 1904); State v. Unger, 103 N.J.L. 18 (Sup. Ct. 1926); Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948)), we yet believe that the proofs here were improperly excluded on the ground that the witnesses themselves were not residents in that precise municipality. The factual pattern here was distinguishable from State v. Unger, supra, in which the witness did not even know where the accused lived; and from State v. Sbrilli, 136 N.J.L. 66 (Sup. Ct. 1947), where the evidence offered was that of reputation at a place of previous temporary residence; and from United States v. Pincourt, 159 F.2d 917 (3 Cir. 1946), where the business and social friend did not know the reputation of the accused in the suburban community in which the latter lived. It was further distinguishable from the line of cases which have excluded testimony of investigators for instance, who travelled from a distance to a party's community and stayed *462 a short time to glean fragmentary knowledge of his reputation there. 3 Wigmore, Evidence (3d ed. 1940), § 692. On the contrary, the foundation in the present case of a long-standing knowledge of the accused's community reputation was quite imposing, that being the crucial test. As said long ago by Mr. Thomas Erskine, arguing, in Thomas Hardy's Trial, 24 How. St. Tr. 1079 (1794):
"Character is the slow-spreading influence of opinion, arising from the deportment of a man in society. As a man's deportment, good or bad, necessarily produces one circle without another, and so extends itself till it unites in one general opinion, that general opinion is allowed to be given in evidence."
We consider that the adventitious location of the geographical boundary line of East Rutherford was too flimsy a barrier to stand against this vital evidence.
The State finally contends that the questions seeking to establish the foundation for this testimony were insufficient for that purpose, it being argued that such inquiry should go to the reputation of the accused as to the specific trait in issue. State v. Steensen, 35 N.J. Super. 103 (App. Div. 1955). The form of these preliminary questions, though inartistic, alternatively sought the general reputation of appellant and his reputation for truthfulness and honesty. While the latter qualities or traits would appear to be of relevance to offenses of the nature of crimen falsi, it is asserted that they are an inappropriate basis for such testimony in respect of the instant charge, inasmuch as reputation of good character finds its relevant justification in the bearing of that good character upon the probability of the defendant's having or not having committed the act charged against him (1 Wigmore, Evidence (3d ed. 1940), § 55) and not upon the probability of intrinsic credibility or otherwise in his present testimonial denial of guilt.
The "relevant facet of character" (State v. Steensen, supra) deemed most appropriate to a bookmaking charge is not suggested to us. There is a certain breadth to the term "honesty" which has been extended by our courts to reach *463 beyond financial probity to include propriety of sexual behavior. State v. Snover, 63 N.J.L. 382 (Sup. Ct. 1899). The epithet "honest" implies a sense of general probity which is the antithesis of criminal tendency or conduct, and which certainly, we think, would imply a "law-abiding" man. In practice, the terms "honesty," "truthfulness" or "veracity," and "being a law-abiding citizen" are frequently conjoined in the normal foundation question. Michelson v. United States, supra.
In any case, from our scrutiny of the record, we are convinced that the form of these preliminary questions eventually would have established the requisite precise foundation, had their continuance not been cut off by the unequivocal ruling of the court rejecting the testimony, in any event or status, upon the sole basis of the divergent residence of the witnesses. Thus, in substance, the deficiencies now suggested in the preliminary questioning pale into an inconsequentiality which does not detract in any way from the manifest wrong and injury suffered by the accused in the exclusion of the offered proofs of this "substantial element of the defense." State v. Baldanzo, supra.
The judgment of conviction is reversed and a new trial ordered.