Seth W. STONE, Plaintiff in Error,

v.

OKLAHOMA REAL ESTATE COMMIS-SION, Defendant in Error.

No. 39228.

Supreme Court of Oklahoma.

March 6, 1962.

Carroll Samara, Oklahoma City, for plaintiff in error.

Lytle, Johnston & Soule, Oklahoma City, for defendant in error.

PER CURIAM.

Seth W. Stone made application to the Oklahoma Real Estate Commission for permission to take the examination required of those seeking a real estate broker's or salesman's license. After a hearing upon the application before the Commission this application was denied upon the grounds that Mr. Stone had been convicted of a crime involving moral turpitude. This action was taken under the Real Estate License Act passed by the Legislature of

Oklahoma in 1949 and amended in 1953. This Act is shown as 59 O.S.1961 Section 831 to and including Section 857.

Under Section 851 of said Act the applicant appealed to the District Court of Oklahoma County. From an adverse judgment in that court he has appealed to this Court.

Section 847, 59 O.S.1961, provides as follows:

"With due regard to the paramount interests of the public, a license, either as a broker or salesman, shall be granted only to persons who bear, and to corporations or associations whose officers bear a good reputation for honesty, integrity and fair dealing."

The question in this case appears to be "Did Seth W. Stone bear a good reputation for honesty, integrity and fair dealing when he made application for a real estate broker's or real estate salesman's license?"

From the record in the trial de novo on appeal to the District Court it appears that the applicant was 59 years of age at the time of trial which was March 29, 1960. His own testimony showed he served time in the Federal Penitentiary and also, the Oklahoma Penitentiary. The applicant's testimony on cross-examination is somewhat evasive but he did admit that he was charged with robbery in 1921 and tried in 1923 and given five years in the penitentiary at McAlester. He was paroled on that charge after serving the minimum time. There appears no pardon on this conviction. In 1923 he was arrested and charged with the possession and attempted sale of stolen Liberty Bonds. He was convicted on this charge and sentenced to two and one-half years in the Oklahoma Penitentiary. The testimony is not clear but it appears that Stone was arrested on December 11, 1935, tried and convicted and sentenced on March 1, 1937, to three years in the Federal Penitentiary at Leavenworth, Kansas. After serving the sentence on the Federal charge he was turned over to the Oklahoma law enforcement officers, and taken to Tulsa where he plead guilty to the charge of stealing an automobile and sentenced to

eleven years and one month at the State Penitentiary at McAlester. He was paroled from the penitentiary on this conviction in 1940. On July 10, 1942, Stone was pardoned for the eleven years and one month sentence and the two and one-half year sentence on the stolen Liberty Bond conviction by the Governor of Oklahoma, Leon C. Phillips, and his full rights of citizenship were restored.

Although the applicant was not charged or convicted of any felonies after his pardon in 1942, he was arrested and paid fines for offenses involving the liquor laws of this State up to 1955. When asked the following question, he gave the following answer:

"Q. Now, Mr. Stone, you testified about the number of convictions, but is it not true since September 14th, 1920, up through May of 1959, you were arrested and charged with a total of 36 times according to the records?

"A. I don't know how many times I was got on whiskey, but I wasn't charged with no crime after '35."

There seems to be no doubt but that the applicant was a law violator from 1921 to 1955.

It may be said for the applicant that at the hearing in the District Court he had witnesses that testified as to his good reputation for honesty, integrity and fair dealing. He also had letters from prominent business and professional men to the same effect.

The trial judge in this case went to great pains to make his position clear and in the journal entry of judgment set out his reasons for denying Stone's application and affirming the action of the Real Estate Commission. We quote from it as follows:

"That applicant admits numerous felony convictions in the Federal Court and the Courts of the State of Oklahoma, and some thirty or more arrests and several convictions for misdemeanors growing out of illegal liquor traffic, operating gambling game, and possession of gambling paraphernalia

and the serving of jail and penitentiary sentences resulting from such convictions; that the Governor of the State of Oklahoma granted to applicant a pardon as to the last two convictions under the laws of the State of Oklahoma.

"The court concludes as a matter of law that the reception of a pardon does not remove the stigma of a felony conviction (58 Am.Jur. 402 # 743; 39 Am. Jur. 553, #54). The requirement of a good reputation as a condition for granting a real estate broker's license is a valid requirement (Ex parte Pope, 33 Okl.Cr. 5, 242 P. 290; Riley v. Chambers, 181 Cal. 589, 185 P. 855, 8 A.L.R. 418). Phrases of Title 59 O.S. 1951, Section 847 are defined: 'Good reputation for honesty': State v. Micci, 46 N.J.Super. 454, 134 A.2d 805, at 810. 'Integrity': Hadwiger v. Melkus (Okl.1959), 338 P.2d 1098, at 1100. 'Good reputation is the result of right thinking as reflected in right living, in a course of honest dealing and honorable conduct.' The requirements for receiving a license and the causes for which a license may be revoked, Title 59 O.S.1951, Section 850–0, are complementary. The basic intention motivating the two statutes, and the entire act, is clear. The terms used, in the two sections considered here, augment and supplement each other. That which would revoke a license prevents its issuance."

The applicant attacks the judgment of the trial court on three grounds, which are:

## I.

"It was an abuse of judicial discretion for the trial court to conclude as a matter of law that reception of a pardon did not remove the stigma of a prior conviction."

## II.

"The trial court erred in concluding as a matter of law that the statute, 59 O.S.1951, Sec. 850, providing grounds for suspension or revocation of a real estate broker's license relates back to and enlarges the eligibility requirements for the granting of a license under Section 847.

"A. The legislative expression of the eligibility requirements for issuance of a real estate broker's license under 59 O.S.1951, Sec. 847, is exclusive and not subject to interpretation by the trial court.

"B. By enactment of 59 O.S.1951, Sec. 850, the Legislature clearly intended to enact a penal statute to control the activities of real estate brokers and salesmen after licensure, and it was reversible error for the trial court to apply the penal provisions of the Act in determining petitioner's eligibility for a license."

## III.

"The judgment rendered by the trial court is contrary to the evidence, and appears on its face to have resulted from bias and prejudice against petitioner because of his prior record."

As to applicant's first contention that it was error for the trial court to conclude that the pardon given the applicant did not remove the stigma of prior conviction we cannot agree. The effect of the pardon in applicant's case was to restore to him his rights of citizenship removing all penalties and legal disabilities. It cannot and does not substitute a good reputation for one that is bad. The Governor had the right to pardon for State offenses but not for the sentence in the Federal Court. Neither did his pardon cover the robbery conviction of 1923. On this matter we call attention to 58 Am.Jur., Witnesses, Sec. 743, p. 402, and 67 C.J.S. Pardons § 11, p. 576, and quote from the last citation:

"It has been stated that the effect of a full pardon is to make the offender a new man, and that a full pardon blots out the existence of guilt, so that in

the eye of the law the offender is as innocent as if he had never committed the offense. However, these statements, characterized as generalizations, have not been universally accepted, recognized, or approved. Moreover, a pardon does not so operate for all purposes, whether the pardon is, or is not, based on the innocence of the prisoner; since as the very essence of a pardon is forgiveness or remission of penalty, a pardon implies guilt; it does not obliterate the fact of the commission of the crime, and the conviction thereof; according to the judicial decisions on the question it does not wash out the moral stain; as has been tersely said it involves forgiveness and not forgetfulness."

This statement is supported by ample authorities. In our opinion a pardon simply does not "wipe the slate clean."

On the applicant's second proposition we think that is controlled by 59 O.S. 1961 § 847. To our way of thinking a man who has violated the law from 1921 to 1955 by committing offenses which range from felonies punishable by death to violations of the laws regulating the sale of intoxicating liquors cannot be said to bear a good reputation for honesty, integrity and fair dealing. The term good reputation connotes the meaning as being considered to be a person of high standing by people that know that person. To us the word integrity means that a person possessing same has an unmarred record not besmirched by acts constituting both robbery and fraud. To hold otherwise we would be downgrading rather than upgrading an occupation that only those of greatest probity should be allowed to engage in.

Since we take the position that the applicant did not measure up to the requirements of Section 847 of 59 O.S.1961, it is unnecessary we answer the remainder of applicant's second proposition and his third contention. We see no bias or prejudice on the part of the trial judge.

The judgment of the trial court is affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and WELCH, HALLEY, JACKSON, IRWIN and BERRY, JJ., concur.

JOHNSON, J., concurs in result.