THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. GUISEPPE DI DOLCE, PLAINTIFF IN ERROR.

Argued February 3, 1932—Decided May 16, 1932.

For the plaintiff in error, *Salvatore F. La Corte.*

For the defendant in error, *Abe J. David,* prosecutor of the pleas, and *Walter C. Tenney,* assistant prosecutor of the pleas.

The opinion of the court was delivered by

KAYS, J. The plaintiff in error, Di Dolce, was tried before the Union County Court of Oyer and Terminer at the October term, 1931, upon an indictment· charging him with murder in the first degree. The jury rendered a verdict of murder in the first degree and the plaintiff in error was sentenced accordingly to be put to death. The plaintiff in error was charged with the shooting of John McGann, a police officer of the city of Elizabeth. The killing occurred about one o'clock in the morning of December 15th, 1930. Di Dolce was running a speakeasy at No. 7 West Grand street, in the city of Elizabeth, Union county. McGann went into the speakeasy about eleven o'clock in the evening of the previous day and ordered Di Dolce to close it and directed the patrons who were present to leave. The patrons did as they were told and after most of them had left McGann, who was in full uniform, went out to the street. A man named Pittius, who was in the speakeasy at this time and was intoxicated, started an altercation with McGann on the street. McGann attempted to arrest him, called a taxicab, which was a short

distance away, and put Pittius in it. About this time Miglorie, who was Di Dolce's bartender, stepped up to the taxi-cab and attempted to interfere with the arrest of Pittius. Whereupon the officer placed him also under arrest and put him also in the taxicab. Miglorie jumped out and had a tussle with the officer McGann, as a result of which the officer struck Miglorie with his night stick. While this struggle was taking place Di Dolce, who had been standing near the entrance of his speakeasy, walked down the street about seventy feet to where the taxicab was standing and fired two shots at officer McGann who fell to the ground. While the officer was on the ground he fired three or four more shots into his body fatally wounding him. After Di Dolce fired the shots he ran away toward the Pennsylvania railroad arch, which was a short distance off. Eight months later Di Dolce was arrested in California and brought back to New Jersey.

We are asked to set aside the judgment of conviction for a number of reasons set out in the assignments of error of which four were abandoned at the time of the argument. The first ground, upon which counsel for plaintiff in error bases his argument for reversal is that the court erred in admitting in evidence certain testimony of one Panepinto, a witness called by the defense. The prosecutor on cross-examination of this witness undertook to show by him that he was a god-father of one of the defendant's children, both the defendant and the witness Panepinto being natives of Sicily, and that according to the custom of Sicily, the relationship of a god-father to the members of the child's family is very close. We think that this testimony was entirely proper for the purpose of showing interest on the part of the witness Panepinto, thereby affecting to some extent his credibility.

The next contention is that the court erred in permitting the state to ask, on cross-examination, the witness Sammar-tino certain questions with relation to the actions of wit-nesses when visiting the wife of the defendant after the homi-cide had been committed. The question objected to was: "After the shooting you went to his house to tell his wife about it, didn't you?" Assuming that this question was not

proper cross-examination it was quite harmless and as the case comes here under the one hundred and thirty-sixth section of the Criminal Procedure act the plaintiff in error is not entitled to a reversal upon this ground.

It is next argued that the court erred in restricting counsel for the defendant in his cross-examination of a witness for the state, James F. O'Brien. The defendant had testified just prior to the shooting of the police officer that the police officer McGann said to him, "you get out of here you Guinea son of a —— or I go to kill you." The witness O'Brien was asked whether such a statement was made by the police officer and his answer was "no." On cross-examination the witness O'Brien was asked, "didn't you say that the police officer raised his club at Ed Pittius and that the defendant was alongside Ed Pittius?" The court sustained an objection to this question. Counsel for plaintiff in error contends that the question should have been permitted to be answered because it was contradictory of testimony the witness had given on direct examination, which testimony is quoted above. We think this question was properly excluded because it had no relationship to the matter testified to by the witness O'Brien on his direct testimony.

It is next contended that the court erred in denying certain of the defendant's requests to charge. There are about fourteen of these requests which were argued by counsel. These all relate to the matter of self-defense as a justification of the killing or to the drunkenness of the defendant as reducing the crime from murder in the first degree to murder in the second degree. On examination of the charge of the court and an examination of these requests brings us to the conclusion that all the matters contained in the requests were charged in substance so far as they were material and competent.

Five of the other grounds for reversal are directed against instructions to the jury by the court as contained in the charge. Some of these instructions dealt with the question of self-defense by the defendant and his defense of his servant Miglorie, the bartender. The court in this respect said

in effect that a police officer making an arrest when he is resisted has a right in law to use such force as is necessary to accomplish the arrest and that the defendant was bound to avoid danger to himself without resorting to violence if he could do so with safety. We do not think that this part of the charge misled the jury and that the judge properly instructed the jury on these points as evidenced by the whole charge. Other objections to instructions by the court dealt with the conduct of the defendant in running away after he had shot officer McGann and not returning until he had been arrested in San Francisco. The court in this respect said, "you may ask yourselves whether or not that conduct in running away is consistent with the theory of self-defense. If he shot in self-defense, he would not have to run away, but he says that he was scared, and he says he threw the gun away. You may ask yourselves whether or not that is what a man does who shoots in self-defense." The court in addition to this further said, "flight for which no proper motive can be assigned and remaining unexplained is a circumstance properly to be submitted to a jury in connection with other incriminating evidence against the accused." We do not think that this charge misled the jury as to the law and that the court was entirely justified in what he said in this respect.

The next contention is that the case should be reversed because, after the jury had retired, they returned and requested the court to further instruct them as to the definition of "malice aforethought." The judge merely repeated what he had already said with relation to the meaning of the word "malice" as contained in the indictment. However, after the court had repeated its definition of the word "malice" he said to the jury, "does that answer your question?" The foreman of the jury replied, "yes, sir." From this record we are of the opinion that the judge had answered the question asked him by the jury to their satisfaction and we therefore find no error in the answer given by the court.

The next ground for reversal argued is that the conviction should be reversed because the verdict was contrary to the weight of the evidence. Our examination of the proofs in

the case leads us to the belief that this argument is without merit and that the great preponderance of the evidence shows that the defendant was not intoxicated to such an extent as to be unaware of what he was doing or to be unable to form a deliberate intent to take life and to willfully carry out such an intent. It is also evident from the testimony that the shooting was entirely without justification on the ground of self-defense. We think there is no evidence to sustain this contention.

The judgment under review is, therefore, affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DONGES, VAN BUS-KIRK, KAYS, HETFIELD, DEAR, WELLS, KERNEY, JJ.  14.

*For reversal*—None.