16 N.J. Super. 372 (1951)
84 A.2d 756
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH WILLIAMS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 5, 1951.
Decided November 27, 1951.
*374 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. George K. Meier argued the cause for the plaintiff-respondent (Mr. Richard J. Congleton, attorney).
Mr. Leslie S. Kohn argued the cause for the defendant-appellant (Mr. Maurice H. Pressler, attorney).
*375 The opinion of the court was delivered by EASTWOOD, J.A.D.
The defendant, Joseph Williams, was tried before the Essex County Court and a jury and convicted on an indictment charging him with having committed an atrocious assault and battery upon one Wayne Richardson, six years of age. The defendant appeals from the ensuing judgment.
On the evening of October 1, 1950, when young Richardson and several children were playing a game of "hide and seek" in the alley adjacent to defendant's residence, he was struck in the cheek by a fragment of a bullet from a revolver fired by the defendant.
The pertinent testimony reveals that the defendant first told the police that the children of the neighborhood were habitually making noise; that he had thrown a firecracker, referred to as a "torpedo," in order to scare them; then, when no particles of a firecracker were found by the police, he admitted that the "torpedo" story was not true; that he had retired early the prior evening, was awakened by a noise in the driveway, which he thought to be a burglar; that he had $3,400 in cash and several thousand dollars in checks in the house; that six days previous thereto he had been disturbed by a noise and was apprehensive because of rumors of burglaries in the neighborhood, although the most recent burglary he could recall was December, 1949; that when awakened by the noise, he went to the window to check, then got his gun, went out the rear door onto the porch and fired one shot into the yard with the intention of scaring away anyone who might be on his premises; that he then opened his gun, ejected the shell, reloaded it and returned to bed. The police took the gun, fully loaded, into their possession. A neighbor testified for the State that on the preceding day the defendant had fired two shots at some boys, saying: "Them damned bastards! I will kill them and pay for them." The State adduced other testimony as to the facts and circumstances connected with the shooting.
*376 The defendant's case proceeded upon the premise that his actions were not unreasonable, but justifiably created by fear of burglars and the bad character of the neighborhood; that to constitute atrocious assault and battery, it was necessary for the State to prove that Wayne Richardson suffered injury as a result of an assault and battery committed by the defendant and that the injury was intentional and "savagely brutal and inhumanly cruel in character," and it failed to do so.
The defendant argues that the court erroneously permitted the State, on cross-examination, over defendant's objection, to elicit from the defendant's character witnesses an answer to the following question:
"* * * if I were to tell you that the defendant had been arrested on August 20, 1948, in Baltimore, Maryland, and charged with felonious entry, which charge was subsequently dismissed by the grand jury, and if I were to tell you that on April 4, 1951, the defendant was arrested and charged with illegal entry into the United States of America and is presently under $1,000 bail on that charge, awaiting hearing before the Immigration Commissioner, would those facts which I have just related to you in any way change your opinion that this defendant is a good, quiet, peaceful, law-abiding citizen."
"The extent of cross-examination as to reports of misdeeds of the person inquired of rests in the discretion of the trial court. The reports and rumors respecting the accused inquired of are those circulating among his neighbors and acquaintances. They must relate to the trait of character involved in the commission of the crime charged, and to acts done before its commission, subject to the qualification that the antecedent time must not be too remote. The truth or falsity of the rumors cannot be established, nor may the details of the transactions be elicited." 58 Am. Jur., Witnesses, sec. 659, p. 364. [1, 2] The rule in this State is that the defendant's reputation in the community constitutes reputation and not the witness' personal opinion. State v. Danser, 116 N.J.L. 487, 492 (E. & A. 1936). In State v. King, 133 *377 N.J.L. 480 (Sup. Ct. 1945), at p. 482; affirmed 135 N.J.L. 286 (E. & A. 1947), it was held that:
"To attack the credibility of a witness generally, it may not be asked of him whether his opinion would be changed if he had known that the defendant had previously been tried and acquitted of a similar charge as contained in the indictment on which the defendant was then being tried. On the previous indictment defendant stood as though she had never been indicted and a question such as the one propounded ascribes to an indictment a sinister aspect."
3 Wigmore on Evidence (3d ed.), sec. 988, p. 619; Bullock v. State, 65 N.J.L. 557 (E. & A. 1900). Cf. Commonwealth v. Mashie, 155 Pa. Super. 419, 38 A.2d 403 (Pa. Super. 1944); Commonwealth v. Becker, 326 Pa. 105, 191 A. 351 (Pa. Sup. 1937). In the case of State v. Von Der Linden, 105 N.J.L. 618 (E. & A. 1929), the court quoted with approval the rule stated in 1 Wigmore on Evidence (2d ed.), sec. 197:
"* * * A question, therefore, which does not expressly refer to the witness' hearing of the conduct as rumored, is improper, because it aims apparently at the conduct as a fact showing the defendant's character."
The defendant here argues  and correctly so  that the vice of the question not only restricted the witnesses' testimony to their personal opinions of the defendant's reputation, rather than his reputation in the neighborhood or community, but also called upon the witness to assume the truth of the two alleged criminal accusations, one prior and the other subsequent to the indictment; and that the form of the question was contrary to the settled rule. But, the State argues, its purpose in propounding the question of the witness was to attack his credibility; that, as the witnesses could have been asked whether they had heard such rumors, the defendant suffered no prejudicial harm. The State relies upon the case of State v. Von Der Linden, supra, to justify the court's ruling. The Von Der Linden case holds that a witness may be asked whether he had knowledge of defendant's arrest and *378 conviction of various offenses. That was not the question here. The witnesses were asked whether their opinions would be changed if they had known of the arrest and indictment in Baltimore prior to the indictment and arrest subsequent thereto for illegal entry. The Von Der Linden case, supra, holds merely that the witness may be asked if he heard, not for the purpose of refuting testimony of good reputation by specific charges or arrests, but rather to ascertain whether "one knowing of certain rumors has nevertheless rashly asserted a reputation inconsistent with the rumors." The State disavows any intent to create in the jurors' minds an impression of the truthfulness of the criminal accusations incorporated in the question. This may well be true, but can one definitely say that such was not the accomplished result. "But the serious objection to them is that practically the above distinction  between rumors of such conduct, as affecting reputation, and the fact of it as violating the rule against particular facts  cannot be maintained in the mind of the jury. The rumor of misconduct, when admitted, goes far, in spite of all theory and of the judge's charge, towards fixing the misconduct as a fact upon the other person, and thus does three improper things  (1) it violates the fundamental rule of fairness (ante, sec. 979) that prohibits the use of such facts, (2) it gets at them by hearsay only, and not by trustworthy testimony, and (3) it leaves the other person no means of defending himself by denial or explanation, such as he would otherwise have had if the rule had allowed that conduct to be made the subject of an issue." 3 Wigmore on Evidence, supra. See also Ippolito v. Turp, 126 N.J.L. 403 (Sup. Ct. 1941), citing with approval, 22 C.J., sec. 579 et seq., p. 481, wherein it is stated:
"* * * it is settled by the great weight of authority that evidence of specific acts is not admissible to prove character."
At p. 483, of the same text, sec. 581, it is said:
"A witness as to character may be asked on cross-examination as to the particular charges against or reports concerning the person *379 whose character is under investigation which he has heard, or as to facts otherwise known to him, or as to what he has himself said at a particular time and place as to matters affecting the character of the person about whom inquiry is made, or what the reputation is in connection with certain specified transactions within the reasonable range of the direct examination. But the object of such inquiries is merely to test the accuracy and candor of the witness, and the facts so elicited are not evidence as to the character or reputation of the person about whom the inquiry is made." See also, 32 C.J.S., Evidence § 436.
It was also prejudicial error to permit interrogation of the character witnesses as to defendant's arrest subsequent to the return of the indictment. Professor Wigmore, in his Treatise on Evidence, vol. 5, sec. 1617, 1618, at pp. 490, 492, says:
"A reputation to character must ordinarily be thought of as contemporary with the character, i.e., as predicating the person, then existing in the community, to possess a certain trait. There is thus no objection, so far as concerns the reputation-element, to using a prior reputation, * * *.

* * * * * * * *
(a) Where the desired character is that of a party  for example, the defendant in a criminal charge, the prosecutrix in a rape charge, or the plaintiff in a statutory action for seduction  it is obvious that after the charge has become a matter of public discussion, and partisan feeling on either side has had an opportunity to produce an effect, a false reputation is likely to be created,  a reputation based perhaps in part upon rumors about the very act charged or upon interested utterances of either party. The safeguards of trust-worthiness are here lacking.

* * * * * * * *
Accordingly, it is generally agreed that a reputation at any time after a charge published, or other controversy begun, is not admissible."
Cf. State v. Sprague, 64 N.J.L. 419 (Sup. Ct. 1900). The defendant's objections were well taken and the court committed reversible error in overruling them.
The defendant alleges error in the court's refusal to permit the defendant's wife to explain on cross-examination the purpose of a visit made by police officers several months prior to the incident in question. The fact of this visit of *380 the police officers was developed by the State on cross-examination and, while the court's refusal to permit the wife to explain the visit on re-direct examination was not reversible error, the witness might well have been permitted to explain the purpose of the visit. Normally, police officers who are called upon to interview persons do so in the course of an investigation of some violation of the law. We think that the testimony should have been admitted to eliminate any unfavorable or prejudicial inference the jury might have drawn from the prosecutor's interrogation.
We find that there was no error in the court's refusal to permit the defendant, on cross-examination of one of the State's witnesses, to prove "the demeanor of the crowd to substantiate the reasons for his `torpedo' story." The defendant's explanation was admissible in his own case but the court could, in its discretion, properly disallow it on cross-examination of the State's witness. Donnelly v. State, 26 N.J.L. 601 (E. & A. 1857).
It is our opinion that the court erroneously sustained the State's objection to the following inquiry, on cross-examination, addressed to Mrs. Richardson, mother of the victim:
"Q. Mrs. Richardson, you presently have a suit pending in the Essex County Court for civil judgment to the extent of $27,000 against the defendant Joseph Williams?"
The State concedes that normally a question as to whether a civil suit is pending may be asked to show bias on part of a witness, but asserts that "this question asked not only whether suit was pending, but also stated an amount. Obviously, Mrs. Richardson would not have a suit pending for $27,000 as she was not the injured party." This argument is specious and begs the question. The evident purpose of the question was to attack her credibility. The question required only an affirmative or negative answer and was obviously preliminary to the ascertainment of whether a civil action for damages had been instituted against the defendant *381 for the damages suffered by Mrs. Richardson's son. An accused is entitled to show the status of a civil action previously begun by the prosecuting witness against him, or by a member of his household in his behalf, as bearing upon the question whether the witness would profit by the conviction in a criminal case. 3 Whart., Criminal Evidence, sec. 1349, p. 2229; State v. Di Dolce, 109 N.J.L. 233 (E. & A. 1932); State v. Cioffe, 128 N.J.L. 342 (Sup. Ct. 1942), affirmed 130 N.J.L. 160 (E. & A. 1943).
The defendant alleges error in the court's refusal to charge his ninth request, reading:
"That the testimony of witnesses introduced for the purpose of showing the good reputation of the defendant indicates that such witnesses have never heard his reputation for being a quiet, peaceful and law-abiding citizen discussed among his neighbors. The absence of talk upon such subject is an indication that the neighborhood considers him worthy. The good reputation of the defendant is of itself a sufficient fact from which a reasonable doubt of guilty may be engendered, which will entitle him to an acquittal. The very absence of talk is an indication that the neighborhood regards him as worthy. Silence may indicate an exceedingly fine reputation. As has well been said `The more unsullied and exalted the character, the less likely it is ever to be called in question.'"
Of course, the court was not required to charge in the specific language of the request. State v. Cleveland, 6 N.J. 316 (1951). In State v. Baldanzo, 106 N.J.L. 498 (E. & A. 1930), Mr. Justice Case, commenting upon the absence of talk in the neighborhood as to one's reputation, stated:
"* * * To behave one's self, to live decently, is to be, in those respects, normal and conventional. The great majority of people are that way. There is little therein to start tongues wagging. When one departs from the conventional and does that which the majority of people do not do, then talk begins, and its volume is apt to be in direct ratio to the degree by which the act or person talked of varies from the norm. It does not follow, however, that a man who leads a life that, according to the standards of the neighborhood, is usual and correct and who, therefore, has not given his neighbors food for chat holds no place in the esteem of the community. On the contrary, he may be highly regarded. The very absence of talk is an indication that the neighborhood regards him as worthy. Silence may indicate an exceedingly fine reputation. As has well been said:
*382 `The more unsullied and exalted the character is, the less likely it is ever to be called into question.' Lemons v. State, 4 W. Va. 755; 6 Am. Rep. 293."
While the court charged the settled rule, we think that in view of the defendant's request, he was entitled to have the court elaborate thereon to the extent, at least, of the rule laid down in the Baldanzo case, at the same time commenting, if he chose to do so, upon the testimony adduced by the character witnesses.
We disagree with the defendant's contention that the court erroneously denied the defendant's motion for dismissal at the end of the State's case and for a directed verdict of acquittal at the conclusion of the entire case. Under Rule 2:7-7 a judgment of acquittal in the place of a motion for a directed verdict may be made by the defendant. The test generally recognized when a motion for directed acquittal is made, is whether there is any evidence from which an inference of guilt may be drawn. State v. Fox, 12 N.J. Super. 132 (App. Div. 1951). In order to justify a conviction, the circumstances on which the State relies must be consistent with the defendant's guilt and inconsistent with any rational theory of innocence. State v. Donohue, 2 N.J. 381 (1949). We find that there was sufficient competent evidence at the end of the State's case and the entire case to support an inference of guilt.
The defendant asserts further error in the court's refusal to charge several requests. The record discloses that in its entirety the trial court's charge to the jury was both complete and accurate and that the failure to employ the language of the requested charge was not prejudicial to the defendant. The court need not charge in the exact language requested if the subject matter of the request has been fully covered in the general charge. State v. Cleveland, supra.
We have considered the other grounds of appeal advanced by the defendant and find no merit therein.
For the reasons stated, the judgment of the Essex County Court is reversed.