35 N.J. Super. 103 (1955)
113 A.2d 203
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FLOYD J. STEENSEN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 14, 1955.
Decided April 6, 1955.
*105 Before Judges CLAPP, JAYNE and FRANCIS.
*106 Mr. C. William Caruso, Special Legal Assistant Prosecutor, argued the cause for the respondent (Mr. Charles V. Webb, Jr., Essex County Prosecutor, attorney).
Mr. Philip J. Mylod argued the cause for the appellant.
The opinion of the court was delivered by FRANCIS, J.A.D.
Appellant was convicted of larceny. His appeal concerns itself primarily with an attack upon the legal propriety of the prosecutor's cross-examination of his character witnesses. Both the form and substance of the interrogation are questioned.
In order to gain perspective for the study of the problem, recourse must be had to certain fundamentals. In the trial of a criminal case the primary proof presentation of the State cannot include evidence of the defendant's bad character. State v. Hauptmann, 115 N.J.L. 412, 436 (E. & A. 1935), certiorari denied 296 U.S. 649, 56 S.Ct. 310, 80 L.Ed. 461 (1935); Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); 1 Wigmore, Evidence (3rd ed. 1940), § 56, p. 450, 454. But the defendant may offer evidence of his general good reputation in the community or neighborhood for the specific trait in issue  reputation being synonymous with character for this purpose. Michelson v. United States, supra, 335 U.S., at page 477, 39 S.Ct. 213; State v. Baldanzo, 7 N.J. Misc. 421 (Sup. Ct. 1929), reversed 106 N.J.L. 498 (E. & A. 1930); State v. Brady, 71 N.J.L. 360 (Sup. Ct. 1904). Such evidence is admitted because of its tendency to demonstrate the improbability of his commission of the offense charged. 1 Wigmore, supra, at page 450.
Once the defendant has undertaken to establish his good character, the door opens for rebuttal by the State. However, the same limitation applies as to the type proof receivable, namely, that it must be adapted to the charge made; it must involve the specific trait in issue. State v. Villano, 6 N.J. Misc. 713 (Sup. Ct. 1928), affirmed 106 N.J.L. 601 (E. & A. 1929); State v. Williams, 16 N.J. Super. 372 (App. Div. 1951); Michelson v. United States, *107 supra, 335 U.S., at page 479, 69 S.Ct. 213; 1 Wigmore, supra, §§ 58, 59. The restriction finds its justification substantively in the necessity of avoiding proof of a multiplicity of irrelevant events of a defendant's life which the prosecutor may think cast disparagement on his general reputation as a good citizen. And from the standpoint of trial practice it conforms with the ordinary rule which limits the cross-examination of a witness to the matters discussed on direct examination, and with the rule which confines rebuttal to contradiction of specific subjects introduced on direct or cross-examination of defense witnesses.
Wigmore points out that the courts often are liberal in allowing a defendant to offer his general good character, such as for being a law-abiding citizen. Id. § 59, p. 462. In our judgment, in the interest of confining the attention of the jury on the basic issue of guilt or innocence and avoiding possible excursions into a multitude of collateral matters, the doctrine of limitation to the specific trait in issue should be respected, except where the crime charged is such as to make difficult, or perhaps impossible, specification of the precise trait of character, good reputation for which would tend to indicate unlikelihood of its commission by the defendant.
Out of the general rule, to which we have adverted, has grown the practice involved in this case. When a defendant produces witnesses who testify to his good reputation for the relevant facet of character, they may be cross-examined as to whether they have heard rumors in the community or neighborhood as to acts or conduct or charges prior to the offense presently asserted by the State which tend to negative such reputation. State v. Williams, supra; State v. Von Der Linden, 105 N.J.L. 618, 620 (E. & A. 1929); Michelson v. United States, supra, 335 U.S., at page 479, 69 S.Ct. 213; Annotation, 71 A.L.R. 1504. Wigmore says such inquiries are almost universally admitted (vol. 3, § 988, p. 619).
This examination is sanctioned as a test of the witness' credibility, the theory being that if he has heard such disparaging *108 rumors his standards as to what constitutes good repute may not be sound or he lacks good faith, or that if he has not heard the rumors (which did in fact circulate), then he is not actually familiar with defendant's reputation. State v. Williams, supra, 16 N.J. Super., at page 377; 71 A.L.R., supra, at page 1514. Justice Jackson explained the matter for the United States Supreme Court in the Michelson case, supra:
"Thus, while the law gives defendant the option to show as a fact that his reputation reflects a life and habit incompatible with commission of the offense charged, it subjects his proof to tests of credibility designed to prevent him from profiting by a mere parade of partisans." (335 U.S., at page 479, 69 S.Ct., at page 220.)
The purpose is not to establish the fact of the conduct which is the subject of the rumor but merely the fact of the existence of the rumor. 71 A.L.R., supra, at 1514; Wigmore, supra, vol. 1, § 197, vol. 3, § 988, p. 624.
The rule has come in for substantial criticism as fundamentally unfair. 3 Wigmore, supra, § 988, cited in State v. Williams, supra, 16 N.J. Super., at page 378. In the Michelson case, the Supreme Court said:
"To thus digress from evidence as to the offense to hear a contest as to the standing of the accused, at its best opens a tricky line of inquiry as to a shapeless and elusive subject matter. At its worst it opens a veritable Pandora's box of irresponsible gossip, innuendo and smear." (335 U.S., at page 480, 69 S.Ct., at page 220.)

* * * * * * * *
"We concur in the general opinion of courts, textwriters and the profession that much of this law is archaic, paradoxical and full of compromises and compensations by which an irrational advantage to one side is offset by a poorly reasoned counter-privilege to the other." (335 U.S., at page 486, 69 S.Ct., at page 223.)
But the court declined to abandon or modify the rule. And of course this Division is bound by the long-standing pronouncement of the Court of Errors and Appeals.
The administration of the rule is in the hands of the trial judge and he has a heavy responsibility to protect the practice from being abused. Michelson v. United States, supra, 335 U.S., at page 481, 69 S.Ct. 213. A correlative obligation rests upon the prosecutor to display a very high *109 degree of good faith in embarking upon such a cross-examination. 71 A.L.R., supra, at page 1541.
In determining whether to allow the cross-examination, the trial court should conduct a preliminary inquiry out of the presence of the jury and he should satisfy himself:
(1) that there is no question as to the fact of the subject matter of the rumor, that is, of the previous arrest, conviction, or other pertinent misconduct of the defendant;
(2) that a reasonable likelihood exists that the previous arrest, conviction or other pertinent misconduct would have been bruited about the neighborhood or community prior to the alleged commission of the offense on trial;
(3) that neither the event or conduct nor the rumor concerning it occurred at a time too remote from the present offense;
(4) that the earlier event or misconduct and the rumor concerned the specific trait involved in the offense for which the accused is on trial; and
(5) that the examination will be conducted in the proper form, that is: "Have you heard," etc., not "Do you know," etc. State v. Williams, supra, 16 N.J. Super., at page 376; Michelson v. United States, supra, 335 U.S., at pages 479-482, 69 S.Ct. 213; 71 A.L.R., supra, at 1519 et seq., 1532 note 5, 1541; Wigmore, supra, vol. 1, § 197, vol. 3, § 988.
And if the conclusion is reached to allow the interrogation, the jury should be informed of its exact purpose either at the conclusion thereof or in the charge.
Turning now to this case, we find that the defendant produced four character witnesses, all of whom testified to his good reputation in the community for the trait in issue, namely, honesty. At the close of the direct examination of the first of these witnesses a side bar colloquy took place between court and counsel in which the prosecutor indicated an intention to ask if the witness "had knowledge of the fact or heard a rumor" that Steensen had been convicted as a disorderly person in Massachusetts (apparently Connecticut was meant) in 1944. Although no official record thereof was exhibited to the court, it appears that the State *110 had in its possession a Federal Bureau of Investigation "sheet" based upon a fingerprint record allegedly showing the defendant's arrest and conviction in a Connecticut police court for a "breach of the peace." At another point it was called a disorderly person offense. Objection was made on the ground that the offense did not pertain to the specific trait in issue and that the F.B.I. sheet was not a record of conviction, although it was conceded that the defendant was in Connecticut at the time as a member of the United States Navy. (A later effort by defendant to show that he was at sea when the conviction was supposed to have taken place was rejected.) The court said the examination would be allowed and advised the prosecutor that if a negative answer was given the matter was at an end. And with respect to objection about absence of pertinency to the trait in issue, defense counsel was told that he could deal with that phase in his summation.
Thereafter the prosecutor put questions of this type to the character witnesses:
"Q. Did you know or hear any rumors with respect to whether or not the defendant had been involved in any trouble in the State of Connecticut?

* * * * * * * *
Q. Did you know or have you heard any rumors that he had been in trouble in Connecticut?

* * * * * * * *
Q. Did you hear or did you know of any rumors this man had been in trouble as a disorderly person in the State of Connecticut?"
Aside from the absence of any time element in the questions, the insidious reference to "trouble" was manifestly improper and prejudicial. Moreover it is obvious that neither "trouble" nor the description thereof as a disorderly person in the question as it was put to two of the witnesses had any relation to Steensen's character or reputation for honesty. And in at least one instance on receiving a negative answer from the witness, in spite of the admonition from the court the questioner continued:
"Q. You didn't hear that?"
*111 The examination of the witnesses was not confined to the alleged Connecticut incident:
"Q. Did you hear any rumors as to his conduct as a police officer?

* * * * * * * *
Q. You have not heard any other rumors about any other matters he might have been involved in in connection with the Bloomfield Police Force?

* * * * * * * *
Q. Have you heard any rumors of any difficulties this man might have been involved in prior to April 18, 1954?

* * * * * * * *
Q. Have you heard any rumors of any trouble he was in in connection with the Bloomfield Police Department prior to the date of this incident? A. No, sir.
Q. You have not heard any of those rumors? A. No, sir."
These latter questions offend even more grievously against the basic rules outlined in the forepart of this opinion. Cf. 71 A.L.R., supra, at page 1535, note 8. Whatever the prosecutor may have thought of the guilt of the defendant, the objective of conviction never justifies the employment of such means. The history of the administration of the criminal law plainly demonstrates that such means imperil the very result sought to be achieved, that is, conviction of the guilty.
It is suggested that the defense objections voiced at the side bar conference were not renewed when the character witnesses were being subjected to the criticized form of interrogation. However, in our view the subject, particularly the contention that the inquiry should relate to the trait in issue, was brought to the court's attention sufficiently so as to warrant the review here. Cf. Deevy v. Porter, 21 N.J. Super. 278, 280 (App. Div. 1952), affirmed 11 N.J. 594 (1953). And in any event the subject is worthy of consideration under the plain error rule. R.R. 1:5-1(a).
Appellant urges as additional error the failure of the trial court to charge the jury, as requested, with respect to the rule to be used in appraising the testimony of an accomplice or a confederate of the defendant. It is noted *112 that counsel specifically stated he had no objections to the charge.
The evidence disclosed that Steensen, a police officer, was accompanied by another officer, one Eakley, when the larceny was committed. Eakley, however, was not indicted for reasons which were undoubtedly satisfactory to the prosecutor in the discharge of his duty. Steensen denied the larceny (money allegedly extracted from a motorist's wallet while ostensibly examining his driver's and registration licenses contained therein) and necessarily any participation therein by Eakley. However, the State used Eakley as an important material witness against the defendant at the trial and there were inferences present in the proof pointing toward his possible participation in the creation of the situation by means of which the theft, if committed, was accomplished.
Further, Eakley's own testimony was to the effect that within an hour or less after the incident Steensen said to him, "I think I got something out of the wallet," to which he made no comment. He testified also that the next day and after the motorist had charged both of them with the stealing, Steensen said to him, "I got $20. Here is $10," which he refused to take. Yet he made no report of these facts until some days later during the intensive police investigation of the matter. Manifestly his delinquency in this regard might have subjected him to departmental disciplinary proceedings or possibly to indictment. N.J.S. 2A:135-1.
Under the circumstances and because the case is to be retried, we express the view that a strong cautionary charge to the jury to scrutinize Eakley's testimony with care and to consider whether it was influenced by fear of punishment or hope of avoiding any proceedings, disciplinary or criminal, against himself seems justified. Cf. State v. Spruill, 16 N.J. 73 (1954); State v. Engels, 32 N.J. Super. 1 (App. Div. 1954).
The judgment of conviction is reversed and a new trial ordered.