**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3867-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DASHAWN H. WARD,

     Defendant-Appellant.

_____

Argued November 8, 2021– Decided November 19, 2021

Before Judges Fasciale and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 17-04-0886.

Emeka Nkwuo argued the cause for appellant (Lomurro, Munson, Comer, Brown & Schottland, LLC, attorneys; Emeka Nkwuo, of counsel and on the brief).

Lucille M. Rosano, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens II, Acting Essex County Prosecutor, attorney; Lucille M. Rosano, of counsel and on the brief).

PER CURIAM

After a jury trial, defendant appeals from his convictions for second-degree conspiracy to commit carjacking, N.J.S.A. 2C:5-2(a)(1), 2C:15-2(a)(2); first-degree carjacking, N.J.S.A. 2C:15-2(a)(2); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2(a)(1), 2C:15-1(a)(2); and first-degree robbery, N.J.S.A. 2C:15-1(a)(2). Defendant argues that the motion judge erred in denying his motion for a Wade[1] hearing, the trial judge erred in admitting into evidence a white t-shirt he was wearing at the time of his arrest, and the trial judge erred in finding aggravating factors and in imposing consecutive sentences.

Around 3:30 a.m. on August 31, 2016, Tikah Arrington was sitting in her car in front of her apartment building in the parking lot with the windows rolled down. A car with two occupants pulled into the lot and parked alongside Arrington's driver's side. The occupant in the front passenger's seat told Arrington to "get out of [her] car." The front passenger then exited the car and attempted to open Arrington's driver's side door. The front passenger opened

---

[1] United States v. Wade, 388 U.S. 218 (1967).

A-3867-18

the driver's side door of Arrington's car and pointed a gun at her stomach. Arrington fled to her apartment building where she observed the gunman's vehicle and her vehicle being driven away. Five minutes after the carjacking, Arrington and her friend called 9-1-1 to report the armed robbery.

Officers Wayne Adams and E.H. Carter, Jr. were the first officers to arrive at the scene and speak with Arrington. Adams testified that Arrington described the armed front passenger as being "between [five foot six inches] and [five foot eight inches], wearing a white t-shirt, blue jeans, short haircut" and having a medium complexion. Arrington described the driver of the car as being in his early twenties and wearing "a white t-shirt with his hair[] [in] dreads, braids, pushed up in like a bun and a bandana around it."

The next day, around 1:30 a.m. on September 1, 2016, Dishon Burnett was walking home after purchasing food, and he placed his keys inside the carry-out bag. Two men walked towards Burnett, and one asked Burnett if he knew where they could purchase marijuana. Burnett responded "no" and continued walking home when he heard one of the men say, "[m]an, run your shit." When Burnett turned around, he saw one man walking towards him and another pointing a gun at him. The man walking towards him took Burnett's bag and sneakers while

the other held his gun on Burnett. The two men then left in the same direction that Burnett was walking.

Burnett arrived at his apartment and used his neighbor's phone to call his sister to ask her to bring his spare apartment keys. He obtained the spare keys, stopped into his apartment to change his clothes, and returned outside to search for his keys, which he believed may have been discarded by the assailants. At this time, he saw the gunman, prompting him to walk to the other side of the street and shout, "can I have my keys?" The gunman drew his weapon, pointed it at Burnett, and fired three shots, all of which missed Burnett. Burnett ran into his apartment and called the police. The 9-1-1 call was recorded and played for the jury at trial. He described the incident to the dispatcher, including descriptions of the assailants, and noted that he knew the gunman as Dashawn, who used to work at the local Burger King.

Burnett gave a recorded statement to detectives and described the gunman as a black male with a light brown complexion, five foot ten to five foot eleven, 150 pounds, "bony," and wore a "white t-shirt with a red and blue design" and "sky blue" washed baggy jeans. He also had a short haircut and no facial hair. Burnett believed that the gunman was young and stated that he had a "baby face." As to the other assailant, Burnett described him as a black male with a

4

dark complexion, five foot ten to five foot eleven, about 160 pounds, with dreads above his shoulders. Detective Thomas showed Burnett a single photograph of defendant, who he identified as the gunman with "100 percent" certainty.

Detective John Bocchino was assigned to investigate the carjacking of Arrington. Later the morning of the carjacking, Arrington arrived at the East Orange police precinct to view a photo array of over 650 photos. Arrington flagged eight photos from the array, noting that two photos resembled the assailant who exited the vehicle and that none of the remaining photos resembled either assailant. When the police showed Arrington updated versions of the two photos that she previously selected, she stated neither were the assailants.

Bocchino went to the scene of the carjacking and recovered surveillance camera footage from Arrington's apartment building, which Bocchino showed to him. The surveillance video showed the assailants arriving next to Arrington's vehicle at 3:11 a.m. and Arrington running away twenty-nine seconds later.

On September 1, 2016, Bocchino created another array with six photographs from the previous array. Detective Sharieff Greenwood conducted the photo array and recorded it by video. Arrington identified defendant as the "one who actually took [her] vehicle" at gunpoint, prompting Bocchino to obtain an arrest warrant and then to arrest defendant.

5

On September 7, 2016, Bocchino asked Arrington to return to the police station again to view a second six-photo array. Detective Rolando Baugh administered the photo array, which was also video recorded. Arrington identified co-defendant Glenford Findlay as the driver of the vehicle. After Arrington's identification, Bocchino asked Baugh to complete pretrial identification documentation, including a Photo Array Eyewitness Identification Procedure Worksheet (the worksheet), which Baugh only partially completed. Bocchino later arrested Findlay outside of his apartment building.

Defendant filed a motion for a Wade hearing. The motion judge conducted oral argument on the motion on February 26, 2018, and ultimately denied the motion, explaining that "there [was] just no evidence of suggestiveness in terms of anything that was done here with system variables that would . . . warrant a . . . Wade hearing."

On appeal, defendant raises the following arguments for this court's consideration:

> POINT I
>
> THE [MOTION JUDGE] ERRED BY NOT GRANTING [DEFENDANT] A WADE HEARING.

A-3867-18

POINT II

THE [TRIAL JUDGE] ERRED BY ALLOWING THE STATE TO INTRODUCE [DEFENDANT'S] WHITE T-SHIRT INTO EVIDENCE ALTHOUGH NO WITNESS IDENTIFIED THE WHITE SHIRT AS THE SHIRT THE SUSPECT WAS WEARING AT THE TIME OF THE CRIMES.

POINT III

THE COURT SHOULD SET ASIDE THE JURY'S VERDICT OF GUILTY AS BEING [AGAINST] THE WEIGHT OF THE EVIDENCE. (Not Raised Below).[2]

POINT IV

[DEFENDANT'S] SENTENCE WAS MANIFESTLY EXCESSIVE AND THE [TRIAL JUDGE] GAVE INAPPROPRIATE WEIGHT TO THE AGGRAVATING AND MITIGATING FACTORS.

POINT V

THE [TRIAL JUDGE] ERRED IN IMPOSING CONSECUTIVE SENTENCES.

For the reasons that follow, we affirm in part, reverse in part, and remand for resentencing in accordance with this opinion.

---

[2] Because defendant acknowledges that he did not move for a new trial on the grounds that the jury's verdict was against the weight of the evidence, we decline to address this argument on appeal. R. 2:10-1; State v. Smith, 262 N.J. Super. 487, 511-12 (App. Div. 1993).

I.

Defendant argues that the motion judge erred in denying his motion for a Wade hearing regarding Arrington's pretrial identification. Defendant asserts that the detective's failure to fully complete the worksheet warranted further examination of the pretrial identification procedures.

To obtain a Wade hearing, "a defendant must present some evidence of suggestiveness tied to a system variable which could lead to a mistaken identification." State v. Anthony, 237 N.J. 213, 233 (2019) (citing State v. Henderson, 208 N.J. 208, 288-89 (2011)). "System variables" include blind identification, pre-identification instructions, lineup construction, feedback, recording confidence, multiple viewings, showups, private actors, and other identifications made. Henderson, 208 N.J. at 288-90. If a defendant proffers such evidence, the State "must then offer proof to show that the proffered eyewitness identification is reliable—accounting for system and estimator variables." Id. at 289. The defendant may cross-examine the State's witnesses, as well as present their own witnesses and evidence relating to system and estimator variables. Ibid. At any point during the hearing, if the judge finds that based on the testimony, defendant's threshold allegation of suggestiveness is baseless, he or she may end the hearing. Id. at 290-91. "Under those

circumstances, the [judge] need not permit the defendant or require the State to elicit more evidence about estimator variables; that evidence would be reserved for the jury." Id. at 291.

At all times, the burden of proof remains with the defendant to "prove a very substantial likelihood of irreparable misidentification." Id. at 289. If the judge determines that based on the totality of the circumstances the defendant has "demonstrated a very substantial likelihood of irreparable misidentification, the [judge] should suppress the identification evidence." Ibid. Our Court has not "created bright-line rules that call for the 'suppression of reliable evidence any time a law enforcement officer makes a mistake.'" Anthony, 237 N.J. at 239 (quoting Henderson, 208 N.J. at 303); see State v. Green, 239 N.J. 88, 109 (2019) (noting that the Court has not "suggest[ed] that any time a full record of an identification is not preserved, the evidence must be excluded").

In denying defendant's motion for a Wade hearing, the motion judge explained again that "there [was] just no evidence of suggestiveness in terms of anything that was done here with system variables that would . . . warrant a . . . Wade hearing." As to Bocchino, the motion judge explained that there was no evidence to show that Bocchino "said something that would be suggestive" when he asked Arrington to return to view more photos, leading the judge to conclude

that it is "really pure speculation to think that . . . Bocchino somehow fed her some information that would be so suggestive." And as to Greenwood, the judge determined that there was no evidence of suggestiveness because Greenwood was not involved in the investigation and performed a double-blind identification procedure. Further, the judge noted that Greenwood checked "yes" to question sixteen[3] on the worksheet, which confirmed that he asked Arrington whether she previously spoke to anyone about the identification, without writing anything further."

The judge correctly denied defendant's motion for a <u>Wade</u> hearing concerning Arrington's pretrial identification because defendant failed to show some evidence of suggestiveness. The judge did not abuse his discretion in denying the motion.

## II.

Defendant contends that the trial judge erred by admitting the white t-shirt because no witness testified that the shirt defendant was wearing when he was arrested was the same shirt the gunman was wearing at the time of the offenses.

---

[3] Question sixteen reads: "Did you ask the witness whether he/she had previously spoken to anyone (law enforcement or civilian) about the identification?"

"We defer to a trial [judge's] evidentiary ruling absent an abuse of discretion." State v. Garcia, 245 N.J. 412, 430 (2021). "We will not substitute our judgment unless the evidentiary ruling is 'so wide of the mark' that it constitutes a 'clear error in judgment.'" Ibid. (quoting State v. Medina, 242 N.J. 397, 412 (2020)).

Evidence is relevant if it has "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. In making this determination, the trial judge "should focus on the logical connection between the proffered evidence and a fact in issue," and "whether the [evidence offered] renders the desired inference more probable than it would be without the evidence." State v. G.V., 162 N.J. 252, 263 (2000) (alteration in original) (citations and internal quotation marks omitted).

Even if evidence is deemed relevant, it may still be excluded. N.J.R.E. 403 permits a trial judge to exclude evidence "if its probative value is substantially outweighed by the risk of: (a) [u]ndue prejudice, confusion of issues, or misleading the jury; or (b) [u]ndue delay, waste of time, or needless presentation of cumulative evidence." A trial judge "has broad discretion to exclude evidence as unduly prejudicial pursuant to N.J.R.E. 403." State v.

11

Jackson, 243 N.J. 52, 65 (2020) (quoting State v. Nantambu, 221 N.J. 390, 402 (2015)).

The trial judge declined to bar the admission of the white t-shirt into evidence. The trial judge explained that she was unaware of any "requirement that [a] piece of evidence should have been shown to the witness" prior to being admitted into evidence. The trial judge then noted that she "anticipate[d] . . . that before the State moves it into evidence that [it will] lay proper foundation in terms of chain of custody and such that [the t-shirt will] probably be authenticated." And finally, the trial judge noted that "[i]ssue[s] of facts are to be determined by the jury," and as a result, "assuming it does go into evidence, then it's up to the jury to determine whether, in fact, this is the same shirt." As a result, the trial judge permitted the line of questioning regarding the white t-shirt, determined that the t-shirt was properly authenticated, and admitted it into evidence.

Arrington testified that defendant was wearing a white t-shirt at the time of the carjacking. Burnett testified that defendant wore a white t-shirt with a red and blue "scribbled" design on the front during the robbery. Bocchino arrested defendant less than twenty-four hours after the carjacking and robbery wearing a white t-shirt. Bocchino identified the shirt as the same shirt that defendant

was wearing when he was arrested.  Although neither Arrington nor Burnett were asked to identify the white t-shirt entered into evidence as the shirt that defendant was wearing at the time of the carjacking and armed robbery, Bocchino properly authenticated the shirt, and the issue of whether the shirt was the same shirt that defendant wore during the commission of the offenses was an issue for the jury to determine.  See State v. Cole, 229 N.J. 430, 450 (2017) (noting that it is "the jury's province to assess the credibility of all of the evidence").  The judge, therefore, did not abuse her discretion in admitting the t-shirt into evidence.

## III.

Defendant argues that the trial judge imposed a manifestly excessive sentence and erred in imposing consecutive sentences.

## A.

Defendant asserts that the trial judge improperly weighed aggravating factors three, N.J.S.A. 2C:44-1(a)(3), six, N.J.S.A. 2C:44-1(a)(6) and nine, N.J.S.A. 2C:44-1(a)(9), and improperly considered the fact that defendant did not apologize to the victims during sentencing.

We review a trial judge's sentencing decision for an abuse of discretion. State v. Jones, 232 N.J. 308, 318 (2018).  This deferential standard applies only

13

when "the trial judge follows the Code and the basic precepts that channel sentencing discretion." State v. Trinidad, 241 N.J. 425, 453 (2020) (quoting State v. Case, 220 N.J. 49, 65 (2014)). We will "affirm the sentence of a trial [judge] unless: (1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (second alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

A trial judge "must identify any relevant aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and (b) that apply to the case." Case, 220 N.J. at 64 (citing State v. Fuentes, 217 N.J. 57, 72 (2014)). The judge must then "determine which factors are supported by a preponderance of [the] evidence, balance the relevant factors, and explain how it arrives at the appropriate sentence." State v. O'Donnell, 117 N.J. 210, 215 (1989). The judge's application of these factors "must be supported by competent, credible evidence in the record." Case, 220 N.J. at 64.

Judges may consider a defendant's "uninterrupted history of criminality" in their determination of whether aggravating factor six is applicable. See State

14

v. Dalziel, 182 N.J. 494, 502 (2005). Judges may also consider a defendant's juvenile and municipal records, State v. Taylor, 226 N.J. Super. 441, 453-54 (App. Div. 1988), as well as a defendant's adult arrests which do not result in convictions, State v. Rice, 425 N.J. Super. 375, 382 (App. Div. 2012) (noting that adult arrests that do not result in convictions may be relevant to the sentence imposed).

Aggravating factor nine is a "'qualitative assessment' of the risk of recidivism, but 'also involve[s] determinations that go beyond the simple finding of a criminal history and include an evaluation and judgment about the individual in light of his or her history.'" Fuentes, 217 N.J. at 78 (alteration in original) (quoting State v. Thomas, 188 N.J. 137, 153 (2006)). "'Deterrence has been repeatedly identified in all facets of the criminal justice system as one of the most important factors in sentencing,' and 'is the key to the proper understanding of protecting the public.'" Id. at 78-79 (quoting State v. Megargel, 143 N.J. 484, 501 (1996))

The trial judge found aggravating factors three, six, and nine applicable and found mitigating factor seven applicable. As to factor six, the judge considered the fact that defendant had been arrested as an adult on two prior occasions and was arrested and pled guilty to third-degree eluding. A finding

15

of aggravating factor six does not preclude a finding of mitigating factor seven; a finding of aggravating factor six does not require that the judge ignore a defendant's extended period of leading a law-abiding life prior to the criminal offenses, and a finding of mitigating factor seven does not require that the judge ignore a defendant's prior criminal record. See Case 220 N.J. at 66-67. As to factor nine, the judge found that "there is a need to deter . . . defendant and others from violating the law by committing robbery, carjacking with a dangerous weapon and also the eluding and . . . defendant must be deterred from engaging in dangerous criminal activity." Further, the judge found that "[t]he public also must be deterred from such violent conduct." These considerations did not result in the judge abusing her discretion in finding aggravating factor nine applicable.

At the close of defendant's sentencing hearing, the judge stated:

> I will note in considering the factors, one thing I did not note on the record that although . . . defendant did apologize to his family, he never apologized to the victims. And that I think goes to his character and attitude, I did not mention that. I meant to mention that in my analysis.

The judge did not specify on the record to what aggravating factor this observation applied. However, a judge may consider lack of remorse in assessing whether aggravating factor three is applicable. See State v. Rice, 425

N.J. Super. 375, 382 (App. Div. 2012) (determining that a sentencing judge did not abuse his discretion where he found that aggravating factor three applied where a defendant "lacked any remorse and took no responsibility for his actions"). Such a finding is permissible based on the concern that a defendant who denies guilt may be less amenable to rehabilitative and correctional programs designed to reduce the risk of future offenses. See State v. Carey, 168 N.J. 413, 426-27 (2001) (affirming the trial judge's finding of aggravating factor three in a vehicular homicide case where the defendant "denied responsibility for the crash and did not acknowledge that he had an alcohol problem"); O'Donnell, 117 N.J. at 216 (affirming the trial judge's finding of aggravating factor three where the defendant was "almost boastful" of his actions, which suggested a lack of remorse). The judge did not abuse her discretion by imposing defendant's sentence.

## B.

Defendant asserts that the trial judge erred in imposing consecutive sentences as to the carjacking and the robbery charges based on the State's theory that defendant was engaged in a "crime spree."

When reviewing "consecutive-versus-concurrent sentencing," we "employ the general shock-the-conscience standard for review of the exercise of

17

sentencing discretion." State v. Torres, 246 N.J. 246, 272 (2021). Judges are permitted to impose consecutive sentences where multiple sentences of imprisonment are imposed and after considering the Yarbough factors. See State v. Yarbough, 100 N.J. 627, 643-44 (1985), superseded by statute in part, N.J.S.A. 2C:44-5(a), as recognized in State v. Cuff, 239 N.J. 321, 348 n.4 (2019) (noting the statute's elimination of a sixth factor originally set forth in Yarbough, which set an outer limit on the overall cumulation of consecutive sentences). Our Court directed sentencing judges to consider the following factors:

> (1) there can be no free crimes in a system for which the punishment shall fit the crime;
>
> (2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;
>
> (3) some reasons to be considered by the sentencing [judge] should include facts relating to the crimes, including whether or not:
>
>> (a) the crimes and their objectives were predominantly independent of each other;
>>
>> (b) the crimes involved separate acts of violence or threats of violence;
>>
>> (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

18

(d) any of the crimes involved multiple victims;

(e) the convictions for which the sentences are to be imposed are numerous;

(4) there should be no double counting of aggravating factors; [and]

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense.

[Torres, 246 N.J. at 264 (quoting Yarbough, 100 N.J. at 643-44).]

The Yarbough factors generally focus on "the nature and number of offenses for which the defendant is being sentenced, whether the offenses occurred at different times or places, and whether they involve numerous or separate victims." Carey, 168 N.J. at 423 (quoting State v. Baylass, 114 N.J. 169, 180 (1989)). The factors are "qualitative, not quantitative; applying them involves more than merely counting the factors favoring each alternative outcome." Cuff, 239 N.J. at 348.

Sentencing judges should be "mindful that aggravating and mitigating factors and Yarbough factors, as well as the stated purposes of sentencing in N.J.S.A. 2C:1-2(b), in their totality, inform the sentence's fairness." Torres, 246 N.J. at 272. The judge "must explain [his or her] decision to impose concurrent or consecutive sentences in a given case" because "[a] statement of reasons is a

necessary prerequisite for adequate appellate review of sentencing decisions."

Cuff, 239 N.J. at 348 (second alteration in original) (quoting State v. Miller, 108

N.J. 112, 122 (1987)).

The judge sentenced defendant to an aggregate sentence of twenty-five years with twenty-one years and three months of parole ineligibility. The judge determined that counts two and six were to run consecutively. The judge placed her reasons for imposing consecutive terms on the record:

> Now, I find that [c]ounts [two] and [c]ount [six] will run consecutive to each other following the Yarbough criteria which I will explain now. As to Yarbough 3(a)[,](c), and (d)[,] the crimes and objectives are predominantly independent of each other in the present case. There were separate acts of violence and they involve multiple victims. On August 31st at approximately 5[:00] a.m. . . . Arrington was parked in the parking lot of her home after she had finished work when she was abruptly carjacked at gun point by the defendant. On September 1, 2016[,] at approximately 1:20 a.m.[,] the other victim . . . Burnett was walking on the street at a different location from . . . Arrington's home or parking lot after he had finished work and he was robbed at gun point by . . . defendant.
>
> Therefore, it is clear that the carjacking and the armed robbery are two different crimes, two different victims, two different methods of operation, two separate occasions, predominantly independent of each other. It is clear to the [c]ourt from the record that both victims of the crimes were unrelated to each other. And that both victims of the crimes were subject and suffered at the hand of . . . defendant.

20

As to 3(b)[,] the crimes involve separate acts and threats of violence, again it is clear to the [c]ourt that carjacking was committed at gun point and the robbery was also committed at gun point. There were victims and high risk of threats to their safety and to their life. [D]efendant posed a danger to people surrounding in the area. . . . Arrington, she was by herself but nevertheless the danger was posed to her and as to . . . Burnett there was danger to him as well as other people who may have been in the area. . . . [T]he incident occurred in an open public street although there was not much evidence but nevertheless there was the involvement of the gun and the dangers that are inherent with that, the use, illegal use of a gun.

In both . . . Carey . . . and . . . State v. Molina, 168 N.J. 436 [(2001)], the Court found that the Yarbough criteria applied and it was not abuse of discretion to impose consecutive sentences when [an] intoxicated . . . driver kills or injures more than one victim. In this case as I have stated there was more than one victim[,] both offenses were separate and distinct from each other. And as such as I indicated I find that [c]ounts [two] and [c]ount [three] shall run consecutive[ly]. Otherwise it would be the result of free crime which the . . . Yarbough factors are intended to prevent.

The judge adequately explained her reasons for imposing consecutive sentences. The carjacking and the armed robbery were different crimes, involving different victims, at different locations. The robbery of Burnett posed further risks of violence to those that may have been in the area. Despite the State's characterization of the series of events as a "crime spree," the judge was

21

not required to sentence defendant to concurrent sentences because the offenses were committed in close temporal proximity.  See State v. Swint, 328 N.J. Super. 236, 264 (App. Div. 2000) (noting that even where offenses have a "unity of specific purpose," are "somewhat interdependent of one another," and are "committed within a short period of time," a concurrent sentence is not required); Carey, 168 N.J. at 427-28 (holding that "a sentencing [judge] may impose consecutive sentences even though a majority of the Yarbough factors support concurrent sentences").

We are, however, constrained to remand for resentencing.  While this appeal was pending, our Supreme Court issued its opinion in Torres, which addresses the standards for imposing consecutive sentences.  246 N.J. at 268. The Court held that "essential to a proper Yarbough sentencing assessment" is "[a]n explicit statement, explaining the overall fairness of a sentence imposed on a defendant for multiple offenses in a single proceeding or in multiple sentencing proceedings."  Ibid.  Here, the judge imposed consecutive sentences and stated that she "considered the overall fairness of the sentence" without further explanation.  As a result, a remand for resentencing is required.

Affirmed in part, reversed in part, and remanded for resentencing in accordance with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3867-18